**CITIZENS SAV. BANK & TRUST CO. et al. v. SPENCER et al.**

No. 4726.

Court of Civil Appeals of Texas. Amarillo.

March 29, 1937.

Rehearing Denied May 3, 1937.

Jno. B. Daniel, of Temple, and Critz & Woodward, of Coleman, for appellants.

Vickers & Campbell, Lockhart & Brown, and Robert A. Sowder, all of Lubbock, for appellees.

JACKSON, Justice.

J. H. Pettit and Elizabeth Amanda Pettit were husband and wife, and at the time of her death on April 10, 1910, they had accumulated a community estate comprised of three sections of land, Nos. 8, 10, and 12, in block P. in Lubbock county, Tex., containing 1,920 acres, and certain personal property.

Against the land there were community debts of 97½ cents per acre due the state and $5,000, the payment of which was secured by a deed of trust. Mrs. Pettit died intestate and no administration was ever had on her estate. There were nine children born to her and her husband, all of whom were minors at the time of her death, and J. H. Pettit, the father, continued to operate and maintain the ranch in the same manner after the death of his wife that he had during her lifetime. On December 24, 1911, he married again and from time to time thereafter acquired in his name numerous other tracts of land in addition to the three original sections which he retained. A part of this additional land was section 7, block P, in Lubbock county, conveyed to him on April 1, 1917 by Mrs. L. M. Davidson, a femme sole, for a consideration of $9,600, of which amount, $7,600 was evidenced by a series of five notes of equal amounts and of even date with the deed, one payable on or before April 1st of each succeeding year.

In order to maintain the integrity of the. property, get the business in better shape, and continue operation, J. H. Pettit negotiated a loan for the sum of $50,000 from the Temple Trust Company, and on September 23, 1918, he and his second wife, Mamie L. Pettit, executed and delivered to said company their note for the amount of the loan, due August 1, 1928, and to secure the payment thereof, executed and delivered their deed of trust creating a lien on 6,598 acres of land in the name of J. H. Pettit. All this additional acreage had been deeded in separate tracts by different grantors, each of whom retained a lien against the part of the land he had conveyed to secure a part of the purchase price. The $50,000 loan was not paid directly to J. H. Pettit, but at his request, the lender paid the entire amount to his different grantors, one of whom was Mrs. L. M. Davidson, to whom the lender paid $6,390.76, the unpaid balance of the purchase price due her by Pettit on section 7, and she executed a release of her lien on said section.

The deed of trust to the Temple Trust Company securing this $50,000 loan was made a first lien, except for the state debt, and the record indicates that some other secured debts, the amount of which is not shown, were subordinated to the lien of the trust company.

The three children of the first wife, who had reached their majority, and J. H. Pettit, together with his second wife, Mamie L. Pettit, conveyed all of the lands held by J. H. Pettit and his first wife at her death, and all the tracts thereafter acquired, which together aggregated approximately 9,340 acres, to W. E. and J. E. Spencer on September 22, 1919. In this conveyance, as a part of the consideration, the grantees assumed the payment of the $50,000 note made to the Temple Trust Company, and, in addition, also assumed and promised to pay the purchase-money notes against the several tracts, which, including the 97½ cents per acre due the state on 1,136 acres, amounted to approximately $49,964. The testimony shows that none of the unpaid purchase money evidenced by the notes given by J. H. Pettit and none of those, the payment of which he had assumed in the purchase of the land, were paid at the time of the conveyance to the Spencers, and their assumption of such indebtedness created a blanket lien against all of the land described in their conveyance.

After the purchase by the Spencers, the record indicates that they subdivided 5,960 acres into 31 small tracts for the purpose of sale. Subsequently, they contracted the sale of 17 of the small tracts, and on the 1st of March, 1923, consummated a loan from the Temple Trust Company for $131,400 and allocated to each small tract its pro rata part of said loan, and such pro rata part was evidenced by a principal note secured by a deed of trust creating a first lien on the tract to which such allocation had been made. Installment notes for a part of the interest on each principal note were secured by a second lien on the same tract securing such principal note. Each of the purchasers of the 17 small tracts from the Spencers became liable for his pro rata part of the loan secured by the lien against the tract which he purchased.

In distributing the loan among the 14 small tracts which were unsold, W. E. Spencer, who had acquired the interest of his brother, J. E. Spencer, placed against the southwest ¼ of section 7, one of the tracts of the subdivision, the sum of $3,200, for which he executed his note, due March 1, 1933, secured by deed of trust against

said quarter section. He also executed an installment interest note for $480, secured by second lien against said tract. This principal note was thereafter on March 16, 1923, sold and transferred by the Temple Trust Company to the Citizens Savings Bank & Trust Company, which transfer was duly recorded.

The sum of $95,676.03 of this new loan was applied to the payment of the $50,000 note issued by the Temple Trust Company and to the payment of other purchase-money debts which the Spencers had assumed in the purchase of the land, and the deed of trust securing the $50,000 loan was released by the Temple Trust Company.

On August 8, 1923, the adult children of Elizabeth Amanda Pettit, deceased, as well as the minor children, instituted suit against their father, J. H. Pettit, and the Spencers to recover their alleged one-half interest in the personal property and their alleged one-half undivided interest in the lands conveyed to the Spencers by their father. The adult children were denied a recovery because they had joined in the deed of conveyance executed by their father and stepmother to the Spencers. Spencer et al. v. Pettit et al. (Tex.Civ.App.) 268 S.W. 779; Id. (Tex.Com.App.) 2 S.W.(2d) 422.

On December 22, 1928, the minor plaintiffs recovered judgment in the suit for the sum of $6,737.60 for their one-third interest in the value of the personal property which had been converted by the Spencers. They also recovered their one-third undivided interest in the real estate and were awarded 1,980 acres of land "subject to any and all valid liens, if any, outstanding against said lands as against the plaintiffs." This judgment was affirmed. Spencer et al., v. Pettit et al. (Tex.Civ.App.) 17 S.W. (2d) 1102; Id. (Tex.Com.App.) 34 S.W. (2d) 798.

On account of default in the payment of the notes, the Citizens Savings Bank & Trust Company of St. Johnsbury, Vt., hereinafter called the savings bank, and H. C. Glenn, as receiver for the Temple Trust Company, herein designated receiver, instituted this suit in the district court of Lubbock county against W. E. Spencer, Robert, Winnie, John, and Herbert Pettit, Dora Pettit Breedlove and husband, Ernest Breedlove, Mrs. Nettie Pettit, a femme sole, Alton Pettit, Jr., and John L. Pettit, minors, J. E. Scott and the Lubbock National Bank of Lubbock as defendants.

The savings bank sought a judgment for its debt evidenced by the $3,200 note, aggregating the sum of $6,310.55, principal, interest, and attorneys' fees, against W. E. Spencer, and upon sufficient allegations, including a plea of subrogation contained in its supplemental petition, sought the foreclosure of its alleged first lien on the southwest ¼ of section 7 against W. E. Spencer, J. E. Scott, the Lubbock National Bank, and the other defendants, hereinafter called the Pettit heirs.

The receiver relied on pleadings similar to those of the savings bank and sought a judgment against W. E. Spencer for $402.99, principal, interest, and attorneys' fees, and a foreclosure of its second lien on the same property and against the same parties. In compliance with the request of plaintiffs, the court appointed a guardian ad litem for the minor defendants, Alton, Jr., and John L. Pettit, and they, together with the other Pettit heirs, answered by general denial, specially denied the execution of the notes, alleged their interest in the land involved, how it was acquired; pleaded that the plaintiffs had notice of their interest, attacked the validity of the liens claimed, set up limitation as a defense to the subrogation alleged, and prayed that the land involved be adjudged to them free of all claims of the plaintiffs or either of them.

The Lubbock National Bank admitted the execution of the notes and mortgages by W. E. Spencer and alleged that the provisions of the first mortgage created a lien against the property in favor of the Temple Trust Company, or its successors, who discharged delinquent taxes; that at the request of W. E. Spencer, it paid such taxes for the year 1928, amounting to $64; that by reason thereof, it was subrogated to the contract and tax lien securing said amount; that it also paid to the Temple Trust Company interest in the sum of $256, and said company had transferred certain interest obligations and the liens securing them to the bank; and that it is now the owner and the holder thereof. The bank also sought to recover on a deed of trust in which, in addition to the item of interest and taxes, was included various other debts alleged due by W. E. Spencer to the bank. In the alternative, the bank claimed that if the Pettit heirs succeeded in defeating the liens alleged by the plaintiffs, that it was entitled to judgment against the plaintiffs for the full amount of its claims.

The case was tried before the court without a jury and judgment rendered on March 20, 1936, giving the savings bank judgment against W. E. Spencer for $6,310.55 and the receiver a judgment against him for the sum of $402.99; however, it was adjudged that neither the savings bank nor the receiver had a valid lien on the land involved and the alleged liens were canceled and held for naught. The court also adjudged that the Lubbock National Bank had no lien on the land, but judgment was rendered for it for the sum of $316.22 against the plaintiffs, and the land involved was decreed to the Pettit heirs, free of all alleged liens asserted in the suit.

The savings bank and the receiver prosecute this appeal, and by several propositions, present as error the action of the court in refusing to foreclose the lien of the savings bank as a first lien on the land in controversy and the lien of the receiver as a second lien thereon, claiming that the undisputed testimony shows that on March 1, 1923, at the time the liens were given to the Temple Trust Company, and on March 16th thereafter, at the time the first lien was assigned to the savings bank, that neither the trust company nor the savings bank had any notice of the claim of the Pettit heirs.

J. H. Pettit negotiated with the Temple Trust Company for the $50,000 loan consummated September 23, 1918, through T. B. Duggan, its active vice president. Pettit testified that during the negotiations, he told this officer of the company that he had been married twice, when his first wife died, the names and the number of his children, that he had married again and was living with his second wife, how he had operated the ranch since his first wife died, that he had purchased land after her death with cattle money made in running the ranch, that his children had an interest in the land, and the loan was for them the same as it was for him; that Mr. Duggan advised him the children had an interest in the land and it would be necessary to get a lawyer to prepare the title so it would be accepted by the company, and advised him of the lawyer to consult.

T. B. Duggan testified that Pettit informed him of the death of his first wife, gave him the names and number of their children, their respective ages, that he had married again; furnished him a description of all the land and personal property, and disclosed to him the facts which were necessary to give him a history of the family and the property, all of which was placed in a written application for the loan and forwarded to the company. This written application does not appear in the record. The testimony discloses that the trust company required and was furnished abstracts of title before the $50,000 loan was consummated. The written contract of sale entered into between the Spencers and J. H. Pettit et al. recites that the title to 620 acres of the land was vested in the minor children, and Pettit was allowed six months in which to perfect and vest in the Spencers a merchantable title thereto. The Spencers required the three adult children of Elizabeth Amanda Pettit, deceased, to join in the conveyance of the land to them made by J. H. Pettit and his second wife.

In August, 1921, Pettit made an affidavit, which was recorded, in which he stated the date of his first marriage, the names of the children of his first wife and himself; that she died April 10, 1910; that on said date, they owned sections 8, 10, and 12; gave the community debts against the land, and represented that said three sections constituted the entire community estate of himself and his first wife, and that none of the property acquired after her death was purchased with community funds.

At the October term, 1919, of the county court of Lubbock county, J. H. Pettit made application to be appointed guardian of his minor children; stated they resided with him, and with the exception of the conclusions stated as to what constituted the community estate of himself and wife, made the same representations as were contained in the affidavit above mentioned.

When the loan for $131,400 was obtained, the contract of sale, the affidavit, and the application for guardianship were in the abstracts of title furnished and were examined by the lawyer of the Temple Trust Company. The savings bank made no investigation, but relied solely on the investigation and examination made by the Temple Trust Company, from whom it purchased the principal note involved in this controversy.

■ In our opinion, we would be unauthorized to set aside the implied finding by the trial court by his judgment that the appellants are not in the position of innocent purchasers or lienholders.

It is admitted that the minor children had a one-third undivided interest in the real estate at the time each of the loans was negotiated by J. H. Pettit from the Temple Trust Company. In fact, this was judicially determined in the litigation reported in the cases of Spencer et al. v. Pettit et al., supra. The testimony of J. H. Pettit and T. B. Duggan, the statement in the contract of sale from J. H. Pettit et al. to the Spencers that there were about 620 acres of land, "the title to which is vested in the children of J. H. Pettit," the requirement by the Spencers that the adult children join in the conveyance, the statements in the affidavit of J. H. Pettit and his application for guardianship, that the minors had a one-third undivided interest in sections 8, 10, and 12, which were in conflict with the recitation in the contract, the failure of the abstracts to reveal any administration on or disposition of the interest of Elizabeth Amanda Pettit, the deceased wife, in the community estate, no such procedure having been had, would, we think, justify the finding of which complaint is made.

Under this record, the inquiry of appellants was not whether the children of J. H. Pettit had an interest in the real estate, but the amount of such interest, and the lands affected thereby.

It is, we think, rather obvious that appellants relied on the opinion and conclusion of the father, a tenant in common, as to the amount of the children's interest and the lands affected by such interest.

In New York & T. Land Co. v. Hyland et al., 8 Tex.Civ.App. 601, 28 S.W. 206, 208, the court holds: "The right of appellant as an innocent purchaser, if admitted, must rest upon the equities connected with the purchase of their vendor, the railway company, and cannot depend upon the facts relied upon to show the innocent purchase and good faith of the appellant at the time it purchased, because the averments of the answer in this connection, while it shows that the appellant purchased in ignorance of the rights of appellees, does not show that the appellant made any inquiries or used any diligence to ascertain whether there were in existence any other heirs or claimants of the derivative estate of Walter Campbell, other than Mrs. Hyland and Elizabeth Gilreath. * * * In all of the cases which we have examined, in which the rights of an innocent purchaser from a part of those holding title were discussed, the doctrine is recognized that if such a purchaser can in any event assert an innocent purchase from a part of the heirs, to the exclusion of other heirs, he ought to show, not only that he was ignorant of the existence of other heirs, but that he had also made inquiry or exercised diligence to ascertain if other heirs existed. Ross v. Morrow, 85 Tex. [172] 174, 19 S.W. 1090 [16 L.R.A. 542]; Hill v. Moore, 85 Tex. [335] 336, 19 S.W. 162; and other cases."

In this opinion, the court also says: "A purchaser who relies upon the representation of his vendor that he is the sole heir of the intestate, whose estate he seeks to sell, places more confidence in such representations than the business relations of the parties would seem to warrant. One desires to sell, and the other purchase; and, viewed from a rational and business standpoint, it seems that a purchaser who seeks to exercise proper caution and diligence should, as to the existence of the title resting in the one from whom he would purchase, seek information as to that fact from other sources than the representations of the seller. And when it is shown that, in his pursuit of inquiry and information, the principal fact relied upon to show diligence is the representations of the seller that he is the sole heir, in such a case he falls short of that degree of fairness and good faith that equity exacts as the measure of his conduct before it will extend to him its relief."

See, also, Scoggins et al. v. Lee (Tex.Civ. App.) 92 S.W.(2d) 1116; Turner et al. v. Germany et al. (Tex.Civ.App.) 94 S.W.(2d) 1177.

The appellants by separate assignments, which we shall consider together, assail as error the action of the court in refusing to foreclose their respective liens, asserting that they are renewals and extensions by the party liable therefor of valid prior liens antedating the title to all parties to this suit; appellants claiming to have been subrogated to the rights of the party holding a prior vendor's lien.

This contention is based on these undisputed facts: On April 1, 1917, J. H. Pettit purchased from Mrs. L. M. Davidson and she conveyed to him section 7, and as a part of the consideration therefor, he executed five vendor's lien notes aggregating the sum of $7,600. On September 23, 1918, he consummated arrangements with the Temple Trust Company to obtain the loan of $50,000 and gave as security therefor a deed

of trust on section 7 and other real estate. To make this deed of trust a first lien on section 7, it was essential that the balance of $6,390.76, evidenced by the vendor's lien held by Mrs. Davidson, be satisfied, and at the request of J. H. Pettit, the Temple Trust Company paid to her this balance and she executed a release of her lien.

None of the $50,000 loan was ever paid, and in the conveyance by J. H. Pettit et al. to the Spencers on September 22, 1919, they assumed the payment thereof as a part of the purchase price of the real estate conveyed. The Spencers negotiated a new loan from the Temple Trust Company for $131,400 on March 1, 1923, the pro rata part of which was secured by separate deeds of trust on the subdivided tracts, and the lien for $50,000 released. Pursuant to this arrangement, the sum of $3,200, evidenced by a principal note, was placed on the southwest ¼ of section 7, and secured by a first lien, and $480, evidenced by note representing part of the interest, was secured by a second lien.

These last-mentioned notes were recognized by the trial court as evidencing valid debts, but the alleged liens given to secure the payment thereof were canceled in their entirety and held for naught, notwithstanding, the Pettit heirs were adjudged the lands they received, subject to liens that were valid against the land as to them. It is manifest from this record that neither J. H. Pettit nor his children ever satisfied, except with borrowed funds which they never repaid, the balance of the purchase price due by them to Mrs. Davidson on section 7.

The appellant's contention is that as survivor of the community estate of himself and his deceased wife, J. H. Pettit had authority to sell or mortgage community property to pay community debts and to renew and extend the debts of the community, particularly where such debts were secured by liens against the community estate. In support of this contention, they rely on the holdings in many cases, and among others, cite the following: Kinard et al. v. Sims et al. (Tex.Civ.App.) 53 S.W.(2d) 803 (writ ref.); Coleman et. al. v. Coleman et al. (Tex.Civ.App.) 293 S.W. 695 (writ ref.); Iiams et al. v. Mager et al. (Tex.Civ.App.) 216 S.W. 422.

Undoubtedly, these opinions announce the correct rule of law where the facts authorize the application thereof, but the Pettit heirs in this case claim that since appellants admit that the debt to which they seek to apply this doctrine was created by their father about seven years after the death of their mother, and something over five years after their father remarried, the rule has no application.

■ As we view the record, a discussion of the merits of these respective contentions are not essential to a determination of the validity of the lien asserted against the Pettit heirs. We are of the opinion that after the death of the mother, the father and children occupied the relation of tenants in common to each other, and the rights of the Pettit heirs in this controversy may be ascertained by the law controlling such relations. It is settled in this state that where the survivor holds the community estate and fails to repudiate the interest of the heirs of the deceased spouse, that such survivor and the children are tenants in common. Wingo v. Rudder, 103 Tex. 150, 124 S.W. 899; Freeman et al. v. Pierce (Tex.Civ. App.) 250 S.W. 778.

In fact, the Supreme Court in Spencer et al. v. Pettit et al., 2 S.W.(2d) 422, 424, supra, says: "Upon the death of Amanda Elizabeth Pettit her one-half of the community estate of herself and husband immediately vested in her children. Thereafter, in the absence of administration or guardianship with partition, the surviving husband and children became tenants in common of the property, each being entitled to the occupation, but neither entitled to the right of disposition of the whole."

Again in the same opinion, Judge Speer says: "It is true, we think, that, if the father at the time of the acquisition of the lands in controversy executed the notes for the deferred payments with the intention to make payment thereof out of the common property of himself and his children, the acquisition would become the joint property of himself and children."

The testimony of J. H. Pettit in this case relative to the management of the ranch property before and after the death of his first wife, the acquisition of real estate, from the proceeds derived from the operation of the ranch; that he acted for the benefit and protection of the property for himself and his children and so intended, is in effect what his testimony was in Spencer et al. v. Pettit et al. (Tex.Civ.App.) 17 S.W.(2d) 1102.

In W. C. Belcher Land Mortgage Company v. Taylor et al., 212 S.W. 647, 649, the

Commission of Appeals says: "At the date of the execution of the note and deed in trust, the property in its entirety was subject to the vendor's lien. Mrs. Taylor, as tenant in common with her children, in order to protect her interest, as well as that of her children, and save the property from threatened foreclosure, had the right to extend the time of payment of the debt, and to this end was authorized to execute a deed in trust binding her interest, though homestead, and also the interest of her children."

In Law v. Lubbock National Bank et al. (Tex.Civ.App.) 21 S.W.(2d) 92, 95, it is said: "A joint tenant or a tenant in common, in order to protect his interest and the interest of the other joint tenants in the property, has the right to extend the time of payment of a debt for purchase money, and is authorized to execute a lien therefor binding his interest and also the interest of the other joint tenants."

■ Whether J. H. Pettit acted under his authority as survivor of the community or as tenant in common with his children, he was, in our opinion, authorized to renew and extend for himself and the other tenants in common the unpaid purchase-money notes on section 7.

■ In the payment and satisfaction of this unpaid balance of the purchase money at the request of J. H. Pettit, extending the date of the payment thereof, and to secure the payment of which the deed of trust was given, the Temple Trust Company was subrogated to the rights of Mrs. L. M. Davidson, the original owner of the purchase-money debt.

The Supreme Court, speaking through Judge Stayton, says: "At the time the deed of trust was executed and the money loaned there was a vendor's lien on the land to secure $475 and accrued interest, and, although application for loan stated that the land was free from incumbrance, the lender knew better, and before paying the money to Blalock had so much as was necessary applied to discharge the lien. Under this state of facts, the court did not err in subrogating appellant to all the rights held by the holder of the note given for purchase money, and in foreclosing the lien." Texas Land & Loan Co. v. Blalock et al., 76 Tex. 85, 13 S.W. 12, 13.

Speaking through Associate Justice Brown, the Supreme Court said: "The debt due to the state for the purchase money of the land, and also the debt due to W. D. Capps for the purchase money in the sale by him of the same land, having been paid off and discharged by the loan agency out of the funds secured by the deed of trust and for which the $2,000 note was given, the defendant, the loan agency, claimed subrogation to those liens to secure so much of the $2,000 as was paid in discharge of those liens. The debts thus paid off were discharged and were merged into the $2,000 note, but equity will preserve the liens to protect the loan agency in the payment of the debts secured thereby, and will subrogate it to the vendor's liens thus discharged, which will support the deed of trust to the extent of those debts." Flynt et al. v. Taylor et al., 100 Tex. 60, 93 S.W. 423, 424.

See also Ephrain Hicks v. T. W. Morris, 57 Tex. 658; Pridgen et al. v. Warn et al., 79 Tex. 588, 15 S.W. 559; Mustain v. Stokes et al., 90 Tex. 358, 38 S.W. 758; Mayes v. Baugh (Tex.Civ.App.) 68 S.W.(2d) 1097.

■ "A third person who has paid or has loaned money to pay a debt secured by a vendor's lien, is entitled to be subrogated to the rights of the vendor where the money was advanced at the debtor's request and for his benefit." 39 Tex.Jur. page 792, par. 32.

■ It does not follow that appellants are entitled to a foreclosure of their liens on the lands in controversy for the amounts of $6,310.55 and $402.99, the respective amounts for which each appellant obtained a personal judgment against W. E. Spencer. If the character of all the subdivided tracts are so nearly equal and uniform that each acre thereof should be considered to have the same value, the amount of appellants' debts, secured by the lien on the southwest ¼ of section 7, belonging to the Pettit heirs, is limited to the proportionate amount of the purchase money with interest thereon, paid to Mrs. L. M. Davidson to whose vendor's lien they were subrogated by transactions with J. H. Pettit. Hicks v. Morris; Belcher Land Mortgage Company v. Taylor et al.; Law v. Lubbock National Bank, supra. The Temple Trust Company paid Mrs. L. M. Davidson $6,390.76 on section 7, due her by J. H. Pettit; therefore, the lien to which appellants were subrogated could not be foreclosed for the whole amount of the debt, principal, and interest, placed against such ¼ section by W. E. Spencer.

■ If we are correct in the foregoing conclusions, the Pettit heirs could not defeat a foreclosure for the proper amount by their plea of limitation.

■ The appellants' assignment complaining of the money judgment against them in favor of the Lubbock National Bank for the sum of $316.22 is sustained, since under this record such judgment was unwarranted. The court refused to foreclose the alleged lien of the Lubbock National Bank, but no complaint is made of such action.

The judgment is affirmed as to W. E. Spencer, but as to the other parties is reversed and the cause remanded.