No reversible error being shown in the record, the judgment is affirmed.

## IMHOLZ v. SOUTHERN OIL CORPORATION OF AMERICA.

### No. 1947.

Court of Civil Appeals of Texas. Eastland.

Nov. 3, 1939.

Rehearing Denied Dec. 1, 1939.

Cox & Hayden, of Abilene, and Roy F. Fromway, of Roby, for appellant.

Scarborough & Ely, of Abilene, for appellee.

GRISSOM, Justice.

H. W. Imholz sued the Southern Oil Corporation of America for damages for an alleged breach of a written contract to purchase oil and gas leases from him and to drill a well on 2645 acres of land in Fisher County. Plaintiff also sued for special damages resulting from said breach by reason of the purchase by Imholz of oil and gas leases covering approximately 1325 acres of land adjacent to said tract which Imholz alleged he had bought but was unable to pay for because of defendant's failure to take and pay him for the leases on the 2645 acre tract.

---

[1] Not released by court at date of publication.

The trial was to the court. Judgment was rendered for defendant, and plaintiff has appealed.

The court, at plaintiff's request, filed findings of fact and conclusions of law, in substance, as follows:

(1) That three farmers, acting as trustees for their neighbors, got up a block of leases comprising about 4,000 acres of land; (2) that said trustees entered into an agreement with plaintiff to sell him the block at $2.50 an acre "and drilling a well on the property"; (3) that after the agreement between Imholz and the trustees, Imholz talked to Yingling, president of Southern Oil Corporation, with a view of making a contract with defendant to drill the property and buy the acreage; (4) that Yingling informed plaintiff the price asked was satisfactory "if they could make a contract"; that Imholz and Yingling discussed the matter in detail; that Yingling said he would have to check Imholz's geology; that if defendant's geologist, Mr. Abramson, approved the structure that, "so far as the structure was concerned", it would be satisfactory. That Yingling told Imholz the titles would have to be merchantable; that any deal was contingent upon the Morrow well coming in as a producer; that the Morrow well did come in as a producer; (5) that in the discussion between Yingling and Imholz "no contract was entered into"; that Yingling told Imholz he would, "when the conditions had been met", have Mr. Watson, a lawyer at Rotan, write a contract to be executed by both parties. That Mr. Watson was never instructed to write such a contract by Yingling, or defendant; (6) that the geologist, Mr. Abramson, did not approve the geology; (7) that a large portion of the leases were covered with mortgages; that there was no waiver of this title defect by defendant; (8) that Mr. Watson had no authority from defendant to represent it in making a contract; that Mr. Watson wrote a proposed contract, at the instance of plaintiff, which was signed and acknowledged by plaintiff "but was never accepted, agreed to, or ratified by the Southern Oil Corporation or S. C. Yingling"; (9) that Mr. Largent was not defendant's agent and had no authority to make a contract for it. The court concluded, as a matter of law, that no contract was ever made between plaintiff and defendant.

Upon plaintiff's request the court filed additional findings of fact and conclusions of law, in part, substantially as follows:

(1) That Mr. Watson examined the title to a part of the leases involved in the proposed trade and that Mr. Formway procured curative matter on a part of said titles. (2) That all of the curative matter was not furnished, in that, there were liens on part of the property and no subrogations or releases of the liens were furnished. (3) That since there was no contract between plaintiff and defendant "it is wholly immaterial why the contract was returned, but the court does find that the geologist, Abramson, did not approve the geology on the leases in question." (5) That the draft of the proposed contract was returned to plaintiff as soon as it was called to Mr. Yingling's attention.

The evidence sustains, if it does not compel, a finding that the verbal discussion of the proposed deal, between Imholz and Yingling did not amount to a verbal contract for the sale and purchase of the realty in question. Of course, if a verbal contract had been made it could not be enforced against the defendant, it having pleaded the statute of frauds. However, plaintiff's suit was based upon an alleged written contract between plaintiff and defendant. There was evidence that in the discussion of the proposed sale, Mr. Yingling advised plaintiff that "in the absence of Mr. Abramson's approval, there was nothing that he could do about it"; that there were no definite arrangements made for entering into a contract; that Yingling stated to Imholz if the proposed block were approved and the titles good "we would make a contract." The evidence further shows that Mr. Watson, who had before and after writing the contract in question, represented the defendant as an attorney, at the request of Mr. Imholz and upon information furnished by Imholz, wrote the contract upon which plaintiff bases his suit; the contract was sent to Mr. Yingling, or defendant, after it had been signed and acknowledged by plaintiff; that the written instrument, or "contract", arrived at defendant's office in the absence of its president, Mr. Yingling, and was returned by Mr. Yingling as soon as he returned to his office and was apprised of the presence there of the proposed contract. The evidence shows that plaintiff furnished to Mr. Watson abstracts of title to the leases in question; that Mr. Watson examined some of them and that plaintiff's counsel, Mr. Formway, cured some of the defects in the titles pointed out by Mr. Watson. There is nothing in the record that suggests anything but good

faith in such actions by such parties. However, the record shows that such action by Mr. Watson was never authorized by defendant. The evidence shows that, at the time Mr. Yingling returned said contract to plaintiff unsigned and refused to enter into the proposed contract, Mr. Watson talked to Mr. Yingling over the telephone, advised him of the situation and told him that as to a certain title or titles covering one or more of the leases in question that the correction of a defect pointed out by Mr. Watson could not be cured within the fixed period of time; that Mr. Yingling instructed Mr. Watson to proceed no further with said matter and advised plaintiff that, because of said defect, defendant did not desire to proceed further with acquisition of the leases. There is evidence to the effect that the geologist, Mr. Abramson, reported as to the territory covered by the leases, which plaintiff proposed to sell defendant, that he had previously worked said territory and "it was no good and he would not spend any time or money on it."

That defendant did not sign the "contract" sent to it by plaintiff is undisputed. But plaintiff contends that said contract was accepted, agreed to and ratified by defendant and that it is, therefore, binding on defendant regardless of the fact that it was not signed by it. Plaintiff says that defendant's acceptance of the contract is shown by the fact that the contract was sent to defendant, after it had been signed and acknowledged by plaintiff, and retained by defendant from about August 21 to September 2. Plaintiff further contends that since the contract was returned by defendant with the statement that the plaintiff's proposition was refused because of a defective title, plaintiff should have been given a reasonable time in which to cure the defect pointed out.

Article 3995, R.S.1925, provides:

"No action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and *signed by the party to be charged therewith.* * * *

"4. Upon any contract for the sale of real estate or the lease thereof for a longer term than one year * * *." (Italics ours)

Chief Justice Phillips, in Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 1116, 15 A.L.R. 216, said: "From an early time it has been the rule of this court, steadily adhered to, that to relieve a parol sale of land from the operation of the statute of frauds, three things were necessary: 1. Payment of the consideration, whether it be in money or services. 2. Possession by the vendee. And 3. the making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced. Payment of the consideration, though it be a payment in full, is not sufficient. This has been the law since Garner v. Stubblefield, 5 Tex. 552. Nor is possession of the premises by the vendee. Ann Berta Lodge No. 42, I. O. O. F. v. Leverton, 42 Tex. 18. Each of these three elements is indispensable, and they must all exist."

■ With reference to plaintiff's contention that acceptance of the contract by defendant is shown by the fact that the contract was mailed to defendant about August 21 and not returned to plaintiff until about September 2, we think the language of Justice Sharp in American Nat. Ins. Co. v. Warnock, 131 Tex. 457, 114 S.W.2d 1161, 1164, is applicable and answers the contention. He said: "To form a binding contract, it must appear that the party to whom the offer is made accepts such offer and communicates such acceptance to the person making the offer; and, in the case of an offer to buy or sell land, the acceptance must be in writing. The facts of this case do not furnish the essential requisites to make a binding contract. This court, in Patton v. Rucker, 29 Tex. 402, said: 'In order to their enforcement by the courts, contracts for the sale of land must be evidenced by writing. When the writing relied on contains within itself all the particulars of a concluded contract, it is sufficient if it be signed by the party against whom it is sought to be enforced; but if, instead of being evidence of a concluded agreement, whatever may be its form, it is really a mere proposal, such a writing is turned into an agreement, and can be enforced in equity by the other party only by his acceptance of it in writing.' See, also, Foster v. New York & T. Land Co., 2 Tex.Civ.App. 505, 22 S.W. 260; Waples-Platter Co. v. Montgomery, Tex.Civ.App., 65 S.W.2d 391; Browning-Ferris Machine Co. v. Thomson, Tex.Civ.App., 58 S.W.2d 183."

304

In Clegg v. Brannan, 111 Tex. 367, 234 S.W. 1076, Clegg and Brannan contracted for an exchange of lands. Brannan executed and delivered to Clegg an instrument in writing setting out the terms of the agreement. Clegg sued Brannan to enforce specific performance of said written instrument. Clegg alleged that when the instrument signed by Brannan was executed and delivered to him he paid Brannan $1.00 in cash; that he assumed an indebtedness owing by Brannan amounting to $15,486; that he paid the amounts stipulated in the instruments by executing and tendering deeds to Brannan to the land provided in the instrument to be deeded to Brannan. Clegg alleged "that by the delivery of said instrument of writing to him, and his acceptance thereof, he agreed to perform and do all the things stipulated in said instrument * * and that both he and * * * Brannan acted upon and treated said instrument of writing as binding upon both parties." Clegg alleged he had furnished abstracts of title to his property to Brannan; that he executed and tendered to Brannan conveyances to the property which Clegg was to convey to Brannan under terms of the contract and that he, Clegg, had performed all the obligations required of him by the contract. Brannan excepted to that part of the petition setting out the alleged contract " * * * since plaintiff did not sign or execute said contract, and since it is a contract required by the statute of frauds to be in writing, and was and is unenforceable as against the plaintiff Clegg" and was, therefore, unilateral, etc. The exception was sustained, and plaintiff declining to amend, judgment was entered for defendant. The judgment was affirmed by the Court of Civil Appeals and the Supreme Court. We call attention to the following language of Justice Pierson, as applicable to the instant case:.

"Plaintiff in error contends that he was bound by Brannan's written contract because he accepted it, and that it was accepted by them as binding upon both. The acceptance of a contract in writing is not equivalent to signing it. * * *

"The statute of frauds provides that contracts for the sale of real estate not only must be in writing, but they must also be signed by the party to be charged therewith. * * *

"The statute expressly says that an action cannot be maintained against one on a contract for the sale of real estate unless it is in writing and signed by the one to be charged with it."

On the proposition that a contract for the sale of real estate, or lease thereof for more than one year, to be enforceable, must not only be in writing but must also be signed by the party sought to be charged therewith, as provided by Art. 3995, subd. 4, see also, Moore v. Powell, 6 Tex.Civ.App. 43, 25 S.W. 472, writ refused; Morris v. Gaines, 82 Tex. 255, 17 S.W. 538; Carter v. Portwood, Tex.Civ.App., 26 S.W.2d 422, 426, writ dismissed; 27 C.J. 266, 292; Walker Avenue Realty Co., Inc., v. Alaskan Fur Co., Inc., Tex.Civ.App., 131 S.W.2d 196.

It is not claimed that the three essential requirements, laid down in Hooks v. Bridgewater, supra, as necessary to relieve a parol sale of land from operation of the statute of frauds is applicable to the facts of this case.

But, in addition to the fact that the statute (Art. 3995, Subd. 4) requires that this contract, before it is binding on defendant, must be signed by defendant, "the party to be charged therewith", the proof does not show as a matter of law an acceptance of the contract by defendant. No one with authority except Yingling is shown to have acted for defendant in the matter. The evidence that the contract was prepared at the direction of plaintiff and mailed to defendant about August 21 and returned and acceptance declined by defendant about September 2; that it was returned to plaintiff by Yingling upon his return to his office and as soon as it was called to Yingling's attention, certainly could do no more than raise a fact issue of acceptance of the proposed contract by defendant. Treating the evidence as capable of raising such fact issue, plaintiff's contention cannot be sustained because the trial court has found that defendant did not accept, agree to or ratify the proposed contract. The evidence supports said finding. Therefore, because the "contract" was not signed by the defendant, "the party (sought) to be charged therewith", and because it was not accepted, agreed to or ratified by defendant, as found by the court, there was no contract in writing between plaintiff and defendant for sale of the leases.

Since plaintiff's cause of action is entirely dependent upon establishing the existence of a written contract and it has not been established the court properly entered judgment for defendant.

The judgment is affirmed.