## COHEN v. TEXAS LAND & MORTGAGE CO., LIMITED, et al.

### No. 14011.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 26, 1940.

Rehearing Denied March 8, 1940.

Fred Arnold, of Graham, and Kearby Peery and T. R. Boone, both of Wichita Falls, for plaintiff in error.

E. G. Thornton, of Olney, and E. L. Klett, of Lubbock, for defendant in error.

DUNKLIN, Chief Justice.

This suit was instituted by Aaron Cohen against the Texas Land & Mortgage Company, a corporation, and E. W. Hunt, in

the nature of trespass to try title to one-half of all the oil, gas and other minerals in 3068.16 acres of land, situated in Archer County. He filed certain special pleadings challenging the sufficiency of certain muniments of title relied on by defendants to defeat a recovery by plaintiff, which will be hereinafter shown.

Both defendants filed answers which included a general demurrer, general denial, plea of not guilty. And defendant, E. W. Hunt, also pleaded the three year statute of limitation to plaintiff's suit, with a further prayer for removal of plaintiff's claim of title as a cloud upon his title, and for judgment decreeing title in him.

Plaintiff filed a supplemental petition, in reply to the answer of defendant, Hunt, presenting a general demurrer, general denial and plea of not guilty. And further, that there had been a severance of plaintiff's title from that claimed by defendant before the latter acquired title and that defendants had never been in adverse possession of plaintiff's mineral rights for which he sued; in the absence of which there was no sufficient basis for the plea of limitation.

Upon trial without a jury, judgment was rendered denying plaintiff a recovery as against either of the defendants, and vesting in defendant Hunt title to the land sued for by plaintiff. Plaintiff has appealed.

Following is the documentary evidence upon which the rights of the parties are based:

J. M. Senter and wife are the common source of title claimed by the parties.

On February 29, 1920, J. M. Senter and wife executed a deed of trust on the property in controversy, together with all royalties accruing from any leases on the land, to secure the payment of their two promissory notes payable to the defendant, the Texas Land & Mortgage Company, the first for the principal sum of $5,-000, and the second for the principal sum of $17,500, payable February 1, 1930, with interest thereon payable annually at the rate of 7 per cent per annum, with option in the holder to mature the principal for default in payment of any interest instalment. That note was introduced in evidence and endorsed thereon are credits for all interest instalments paid at their respective due dates up to February 1, 1930. A. G. Wood was named as trustee

in the deed of trust, with power to sell the property at public sale to satisfy the debt in the event of default in payment of the note after maturity, upon request of the holder and convey the property to the buyer by a proper deed of conveyance. With a further provision that should A. G. Wood, the named trustee, fail or refuse or be disqualified to act, then the holder of the note or general manager of said mortgage company shall have power to appoint a substitute trustee, without notice to the makers, vested with the same powers as given to said Wood; also power in the original or substitute trustee to execute to the purchaser at such sale a deed of conveyance to the property sold, which shall be prima facie evidence that all prerequisites to the validity of the sale, under the terms of the deed of trust, were had and done. That instrument was duly acknowledged by the grantors as required by Statute, and was duly recorded in the mortgage records of Archer County, on March 4, 1920.

On February 1, 1923, J. M. Senter and wife, for a consideration of $8,000 paid and secured to be paid by Aaron Cohen, executed and delivered to Aaron Cohen, plaintiff, a deed of conveyance, with general warranty of title, to an equal undivided one-half of all the natural gas, petroleum, coal and all other minerals and mineral substances whatsoever in, on and under the land in controversy, with these further stipulations: "It is agreed and understood that all future oil, gas and mineral leases affecting the hereinafter described lands, are to be made and executed by J. M. Senter, and it shall not be necessary for the said Aaron Cohen to join therein or assent thereto, but the said J. M. Senter agrees to pay to said Aaron Cohen one-half of all bonus or lease money, and one-half of all rentals hereafter received, after the payment of all necessary expenses connected therewith. It is understood that all of said lands are now under lease, and the foregoing clause as to bonus and lease money shall not apply unless and until said lands are again leased."

Plaintiff's suit was predicated upon that deed, which was duly acknowledged at the time of delivery, and filed and recorded in the deed records of Archer County, on February 5, 1923; and it established prima facie his right of recovery, unless defeated by facts, subsequently occurring and hereinafter noted.

On July 24, 1923, J. M. Senter and wife executed to S. G. Helm a deed to the land in controversy (which included both the surface right and the one-half mineral rights then in the grantors), with warranty of title. The consideration recited in that deed was "the sum of Nine Thousand ($9,000.-00) Dollars cash to us in hand paid by S. G. Helm, the receipt of which is hereby acknowledged, and the further consideration that the grantee herein takes the property hereinafter described, subject to the payment of twenty two thousand five hundred ($22,500.00) Dollars, and all accrued interest thereon, owing to The Texas Land & Mortgage Company, Ltd., as shown by a deed of trust recorded in Volume 10, page 263, Deed of Trust Records of Archer County, Texas, and further subject to the payment of Five Thousand One Hundred Sixty and No/100 ($5,160.00) Dollars and all accrued interest thereon owing to H. C. Curtis, as shown by a deed recorded in Book 53, page 462, of the Deed Records of Archer County, Texas." That deed was duly acknowledged by the grantors and filed for record on July 29, 1923.

On February 19, 1930, S. G. Helm and wife, Evelyn Helm, executed a deed of trust, reciting the execution by J. M. Senter and wife to A. G. Wood, trustee, of date February 27, 1920, to secure payment of their two notes in favor of the Texas Land & Mortgage Company, one for $5,000, maturing February 1, 1925, and one for $17,-500, maturing February 1, 1930, with these further stipulations:

"Said two notes above described, having been assumed by S. G. Helm, in deed from J. M. Senter and wife, Laura Senter, dated July 24th, 1923, and recorded in Vol. 73, page 640, Deed Records of Archer County, Texas.

"And, Whereas, interest has been paid on said notes to February 1st, 1930, and the following payment on the principal $5,000.-00, on Feb. 13th, 1925, leaving the last note of $17,500.00 still remaining due and unpaid. It is expressly agreed and understood that we, said S. G. Helm and wife, Evelyn Helm, in order to further secure the last note above described, do hereby convey, in trust, to James C. Macdonald, Trustee, all rights that we, or either of us have in any and all royalties arising or accruing out of, or under, any lease, or leases now existing on the land above referred to, or any part thereof, and of record in the County where said land is situated; and

said S. G. Helm and wife, Evelyn Helm, have requested that the date of maturity of aforesaid note be extended.

"Now, Therefore, in consideration of the premises, it is hereby agreed between the company and said S. G. Helm, and wife, Evelyn Helm, as follows:

"That the date of the maturity of the aforesaid last note is hereby extended so that it shall become due and payable as follows, to-wit:

"$17,500.00 on February 1st, 1935, with the privilege of paying one-fifth of same on February 1st, of each or any year; and shall from Feb. 1/30 draw interest as follows, to-wit: at the rate of 7½% per annum, payable annually on February 1st.

"That said last note and the aforesaid Deed of Trust securing same shall from this date have the same force and effect they would have had if said notes had been originally payable at the date to which it is hereby extended, with interest as above specified, and had been so described in said Deed of Trust.

"By the acceptance hereof said Mortgage Company agrees to the foregoing, and the said S. G. Helm and wife, Evelyn Helm, hereby promise and agree to pay the said last note, and all interest according to the terms thereof as hereby modified."

That instrument was duly acknowledged and was filed for record February 28, 1930.

On January 11, 1935, the Texas Land & Mortgage Company executed an instrument in writing reciting the execution of the deed of trust by J. M. Senter and wife, on February 29, 1920, to secure payment of the indebtedness therein shown; default in payment thereof; that the Texas Land & Mortgage Company had declared the same due; that A. G. Wood, named as trustee in said deed of trust, had since died; appointment by said company of A. A. Cooper as substitute-trustee, with power to sell the property covered by said deed of trust, in accordance with powers therein specified. That instrument was duly acknowledged and was filed for record February 12, 1935.

On February 5, 1935, A. A. Cooper, acting as such substitute trustee, under the appointment so made, executed to the Texas Land & Mortgage Company a deed to the land in controversy, and binding J. M. Senter and wife by a general war-

ranty of title, for a recited consideration of $10,000 cash paid; reciting that the sale was made under the power given to A. G. Wood, trustee, and his duly appointed substitute trustee, by the deed of trust executed by J. M. Senter and wife, of date February 27, 1920, and that all the prerequisites required for making the sale had been complied with by him as substitute trustee. That deed was duly acknowledged and duly filed for record February 12, 1935.

On January 8, 1938, the Texas Land & Mortgage Company, purchaser at that sale, executed a deed of conveyance of the land, with general warranty of title, to E. W. Hunt, for the sum of $27,500 cash paid, reciting that the title conveyed was acquired by the grantor from the sale made by A. A. Cooper, substitute trustee. That deed was duly acknowledged and duly recorded February 19, 1938.

Prior to execution of the extension agreement by S. G. Helm, and prior to the execution of any of the other instruments subsequent thereto, shown above, said Helm and plaintiff, Aaron Cohen, executed oil leases jointly on certain portions of the tract in controversy, as follows:

To J. S. Culver, for a cash consideration paid of $2,320, dated August 5, 1925; and on July 25, 1928, that lease was surrendered to those lessors by the Empire Gas & Fuel Company, to whom it had been assigned.

Two to Harry Hines, one of date October 12, 1928, and one of date August 15, 1928. All of which were duly acknowledged and recorded.

Later, and on June 29, 1934, more than four years after the due date of the $17,500 note of J. M. Senter and wife, above shown, of date February 27, 1920, S. G. Helm and Aaron Cohen jointly executed another oil and gas lease to Huylar W. Lee, on a portion of the land in controversy, for a cash consideration of $10 and royalties on all oil and other minerals produced therefrom, and same was likewise duly acknowledged and recorded.

Each of those leases to Harry Hines and Huylar W. Lee, respectively, was for a nominal cash consideration and stated royalties accruing from oil and gas thereafter produced by the lessees from the land covered by the lease.

On May 25, 1937, some nine months prior to its conveyance to E. W. Hunt, above shown, the Texas Land & Mortgage Company executed an oil and gas lease to the Texas Company, on 80 acres of the land in controversy, for a consideration of $400 cash and stated royalties of oil and gas thereafter produced by the lessee from development of the lease. That instrument was duly recorded July 10, 1937.

On April 1, 1938, some two months after his purchase from the Texas Land & Mortgage Company, E. W. Hunt executed seven oil and gas leases on different portions of the land in controversy to L. T. Burns, for which he had received $16,575.30.

On November 17, 1938, E. W. Hunt executed another lease of all oil, gas, sulphur and other minerals, to the Shell Petroleum Company, on 286.33 acres of the land in controversy, for a cash consideration paid of $2,063.30, and stated royalties from the oil produced from the land leased. The lease was to run for a period of five years and as long thereafter as oil should be produced from the premises. That lease was duly acknowledged and placed of record on December 13, 1938.

In his amended petition, on which he went to trial, plaintiff alleged the deed executed to him by J. M. Senter and wife, under which he claimed title. He also alleged the execution of the other instruments set out above, under which defendants claimed title, and against which he pleaded the four year period of limitation, fixed by Arts. 5520 and 5522, Revised Civil Statutes, Vernon's Ann.Civ.St. Arts. 5520, 5522, as against each and all the instruments shown above, under which defendants based their claims of title. Also that since the sale to the company was made after the right thereto as against Senter, under his deed of trust of date February 27, 1920, was barred, it was likewise barred in this suit, in the absence of a valid extention of that mortgage lien.

And in answer to defendant's plea of the three year statute of limitation to plaintiff's suit, he alleged that there was no showing of adverse possession of plaintiff's undivided half interest in the minerals under the land. With further allegations to the effect that since, in the deed to plaintiff, his grantor, J. M. Senter, reserved the right to lease any of the land conveyed for oil, gas and other minerals, without consent of him, the grantee, but with Senter's agreement to account to plaintiff for one-half of the proceeds,

the defendants, as claimants of title through Senter and wife, had the same right to lease the property, but were charged with the same obligation to account to plaintiff for one-half of the proceeds. That plaintiff has elected to ratify and treat as valid the aforesaid oil leases executed by defendants and claim one-half the proceeds realized therefrom and to recover personal judgment against defendants therefor under his prayer for an accounting. And he prayed for such recovery upon the theory that the extension agreement and all said transactions that followed thereafter were inoperative against plaintiff's half interest in the minerals he acquired from J. M. Senter and wife, shown above, because of limitation pleaded.

He further pleaded the Statute of Frauds, Art. 3995, as against the extension agreement executed by Helm and wife to the Texas Land & Mortgage Company, because same expressly recited that it was to become effective when accepted by the company, and no acceptance in writing was shown.

■ By Art. 5520, Rev. Civ. Statutes, Vernon's Ann.Civ.St. Art. 5520, it is provided that actions to recover real estate or for foreclosure of vendor's liens or deeds of trust or mortgage liens on real estate shall be commenced within four years after the cause of action thereon has accrued, and not thereafter; and that no power of sale conferred by any deed of trust or other mortgage on real estate shall be executed after the expiration of four years from the maturity of the indebtedness secured thereby, and all sales thereafter made thereunder shall be void, unless such indebtedness is extended by agreement in writing by the party or parties primarily liable therefor, and acknowledged and filed and recorded in the records of conveyance of real estate, as provided by law.

Art. 5521, which was effective when Helm executed the extension agreement, but was repealed by Acts of 42nd Legislature in 1931, c. 136, effective August 23, 1931, before the extension agreement was executed, reads: "Purchase money or mortgage lien notes relating to real estate shall conclusively be presumed to have been paid after four years from the date of maturity of such notes unless extended as provided by law."

Art. 5522, Rev.St., reads: "When the date of maturity of either debt referred to in either of the foregoing articles is extended, if the contract of extension is signed and acknowledged as provided for in the law relating to the execution of deeds of conveyance by the party or parties obligated to pay such indebtedness as extended and filed for record in the county clerk's office in the county in which the land is situated, the lien shall continue and be in force until four years after maturity of the notes as provided in such extension, the same as in the original contract and the lien shall so continue for any succeeding or additional extension so made and recorded. The date of maturity set forth in the deed of conveyance or deed of trust or mortgage, or the recorded renewal and extension of the same, shall be conclusive evidence of the date of maturity of the indebtedness therein mentioned. Provided the owner of the land and the holder of the note or notes may at any time enter into a valid agreement renewing and extending the debt and lien, so long as it does not prejudice the rights of lien holders or purchasers subsequent to the date such liens became barred of record under laws existing prior to the taking effect of, or under this Act; as to all such lien holders or purchasers any renewal or extension executed or filed for record after the note or notes and lien or liens were, or are, barred of record and before the filing for record of such renewal or extension, such renewal or extension shall be void."

As announced by the Supreme Court, in Jasper State Bank v. Braswell, 130 Tex. 549, 111 S.W.2d 1079, 1085, 115 A.L.R. 329: "While these articles are in a sense registration statutes, they are in general sense and purpose statutes of limitation."

■ The proviso in Art. 5522, that "the *owner of the land* [italics ours] and the holder of the note or notes may at any time enter into a valid agreement renewing and extending the debt and lien, so long as it does not prejudice the rights of lien holders or purchasers subsequent to the date such liens became barred of record", etc., clearly indicates that the extension shall operate only on the land owned by the one who executes the agreement, and not on the interest of others in the land not parties to the agreement, and who have not assented thereto. Such was the interpretation adopted, in effect, by our Supreme Court, in Jasper State Bank v. Braswell, 130 Tex. 549, 111 S.W.2d 1079, 115 A.L.R. 329; also in Home Owners' Loan Corporation v.

Cilley, Tex.Civ.App., 125 S.W.2d 313, writ of error refused. Indeed, it cannot be presumed that in enacting those statutes the Legislature intended to vest in the one primarily liable on the note extended, authority to impair vested rights of another in the same property without his consent and who is in no sense a party to the agreement.

For that reason we conclude that while the extension agreement of Helm, appointment of the substitute trustee, the sale and deed made by him under terms of the deed of trust to defendant, the Texas Land & Mortgage Company, and the deed by that company to defendant, E. W. Hunt, of the property in controversy were valid and binding on his interest and the interest of defendants claiming under him, they were all void as against the title of plaintiff Cohen to the one-half interest in the minerals in the land in controversy, theretofore acquired by him from J. M. Senter and wife, his deed to which was duly filed for record at the time of the extension. And under terms of the agreement of Senter and wife in their deed to Cohen, to account to him for one-half of the proceeds realized from any mineral leases thereafter made by them on the property, defendants, who deraigned title through Senter and wife subsequent to the record of plaintiff's deed, are under the same obligation to plaintiff. And this is true notwithstanding the fact that under those proceedings defendants acquired good title, through Senter and wife, to an undivided one-half of the minerals and full title to the surface rights in the land, in which plaintiff claims no interest. Nor did defendant make J. M. Senter and wife, if living, or their heirs, if deceased, parties defendants to their cross-action for title and seek a recovery against them as well as against plaintiff Cohen.

We conclude further that there was merit in plaintiff's plea that the extension agreement of Helm, on which defendants' claims of title are primarily predicated, was void as against plaintiff's suit, because that agreement was not accepted in writing by defendant, Texas Loan & Mortgage Company, within the provisions of the Statute of Frauds, Art. 3995, especially so in view of this concluding provision of the instrument: "By the acceptance hereof said Mortgage Company agrees to the foregoing, and the said S. G. Helm and wife, Evelyn Helm, hereby promise and agree to pay the said last note, and all interest according to the terms thereof as hereby modified."

If the extension agreement was subject to that attack, then all the proceedings thereunder, including the deeds under which defendants claim title, would be likewise void as against plaintiff's suit, independently of merits of our foregoing conclusion that it was void for the other reasons stated, and which we believe all sufficient of itself. 20 Tex.Jur., pages 316 to 319, inclusive, and decisions there cited, including Clegg v. Brannan, 111 Tex. 367, 234 S.W. 1076. More nearly in point and we believe of controlling effect here is the later decision of our Supreme Court in opinion of Justice Sharp, in American Nat'l. Ins. Co. v. Warnock, 131 Tex. 457, 114 S.W.2d 1161, 1164, in which this was said: "To form a binding contract, it must appear that the party to whom the offer is made accepts such offer and communicates such acceptance to the person making the offer; and, in the case of an offer to buy or sell land, the acceptance must be in writing. The facts of this case do not furnish the essential requisites to make a binding contract. This court, in Patton v. Rucker, 29 Tex. 402, said: 'In order to their enforcement by the courts, contracts for the sale of land must be evidenced by writing. When the writing relied on contains within itself all the particulars of a concluded contract, it is sufficient if it be signed by the party against whom it is sought to be enforced; but if, instead of being evidence of a concluded agreement, whatever may be its form, it is really a mere proposal, such a writing is turned into an agreement, and can be enforced in equity by the other party only by his acceptance of it in writing.' See, also, Foster v. New York & T. Land Co., 2 Tex.Civ.App. 505, 22 S.W. 260; Waples-Platter Co. v. Montgomery, Tex.Civ.App., 65 S.W.2d 391; Browning-Ferris Machine Co. v. Thomson, Tex.Civ. App., 58 S.W.2d 183."

See, also, Imholz v. Southern Oil Corporation of America, Tex.Civ.App., 134 S. W.2d 301.

The extension agreement, the appointment of substitute trustee and his deed under which defendants claimed title, were of record and were insufficient on their face to show that they had acquired title to plaintiff's undivided half interest in the property in controversy, and therefore there was no merit in defendants' plea of limitation of three years, based on Arts. 5507 and

5508, Rev.Civ.St., even if it be said that defendants were in adverse possession of plaintiff's · mineral interest in the land. Savage v. Rhea, Tex.Com.App., 33 S.W.2d 429; Baldwin v. Root, 90 Tex. 546, 40 S.W. 3; Green v. Hugo, 81 Tex. 452, 17 S.W. 79, 26 Am.St.Rep. 824; Wall v. Lubbock, 52 Tex.Civ.App. 405, 118 S.W. 886; Burnham v. Hardy Oil Co., 108 Tex. 555, 195 S.W. 1139; Southwestern Settlement & Development Co. v. Village Mills Co., Tex.Civ. App., 230 S.W. 869.

■ Nor do we find any evidence in the record of adverse possession of the land in controversy by Helm or defendants. Indeed, the evidence shows that Helm recognized plaintiff's interest by joining with him in several leases, the last of which was executed in 1934, four years after the due date of the Senter note, secured by the original deed of trust. And there was no evidence that either he or either of the defendants ever took adverse possession of plaintiff's mineral interests by drilling wells; and the leases executed by them were made in the years 1937 and 1938, which was less than three years prior to the institution of this suit on February 7, 1939; and that, too, for minor portions of the land in controversy.

■ We further conclude that the contention advanced by defendants in their briefs, that since Helm was a cotenant with plaintiff, he had authority, as such, under the common law, to bind plaintiff's interest in the minerals by the extension agreement, is without merit, because, first, the provisions of Arts. 5520 and 5522 are controlling and exclude the right of the defendants to invoke the common law applicable to cotenants to sustain their title; second, this is said in 11 Tex.Jur., para. 41, page 466: "Each cotenant can sell or encumber his undivided share of the common property, and the others cannot prevent him, for he thus interferes with no right of theirs. The form of the conveyance is of no importance; it can be as varied as individual transactions are varied, —indeed this is an individual transaction. It may be by deed, assignment, will, mortgage, lease, option, partition or any other instrument or transaction affecting the title. One may not, however, convey or otherwise encumber the share of his cotenant. He is not a partner, with the general power to represent the firm, nor is he an agent merely because of the cotenancy. From this it follows one of the cotenants cannot convey or encumber the whole estate." A multitude of Texas decisions are cited in support of that text, including Heller v. Heller, 114 Tex. 401, 269 S.W. 771; Thomas v. Morse, 80 Tex. 289, 16 S.W. 48. Also, Stephen v. Beall, 22 Wall. 329, 22 L.Ed. 786.

We quote the following from opinion in W. C. Belcher Land Mortgage Co. v. Taylor, Tex.Com.App., 212 S.W. 647, 649, "At the date of the execution of the note and deed in trust, the property in its entirety was subject to the vendor's lien. Mrs. Taylor, as tenant in common with her children, in order to protect her interest, as well as that of her children, and save the property from threatened foreclosure, had the right to extend the time of payment of the debt, and to this end was authorized to execute a deed in trust binding her interest, though homestead, and also the interest of her children."

And this is from syllabus to Hall v. Looney, Tex.Civ.App., 106 S.W.2d 820: "Where tenants in common executed a vendor's lien note and a renewal thereof, and, on the death of one, his interest was devised to the surviving cotenant and the latter's family, which included plaintiffs, the surviving cotenant, who was also executor, was the 'party obligated to pay such indebtedness' within the statute and was authorized, independently of the will, to extend the note and lien, so as to affect plaintiffs' interest."

In Law v. Lubbock Nat. Bank, Tex.Civ. App., 21 S.W.2d 92, 95, the court said: "A joint tenant or a tenant in common, in order to protect his interest and the interest of the other joint tenants in the property, has the right to extend the time of payment of a· debt for purchase money, and is authorized to execute a lien therefor binding his interest and also the interest of the other joint tenants." W. C. Belcher Land Mortgage Co. v. Taylor et al., supra.

In Citizens Savings Bank & Trust Co. v. Spencer, Tex.Civ.App., 105 S.W.2d 671, 677, the foregoing excerpt from Law v. Lubbock Nat. Bank, supra, was quoted, following which this was said:

"Whether J. H. Pettit acted under his authority as survivor of the community or as tenant in common with his children, he was, in our opinion, authorized to renew and extend for himself and the other tenants in common the unpaid purchase-money notes on section 7.

"In the payment and satisfaction of this unpaid balance of the purchase money at the request of J. H. Pettit, extending the date of the payment thereof, and to secure the payment of which the deed of trust was given, the Temple Trust Company was subrogated to the rights of Mrs. L. M. Davidson, the original owner of the purchase-money debt."

But in neither of those cases was the statute of limitation under Arts. 5520 and 5522, Rev. St., pleaded, and in each case the notes extended were for purchase money of the property; and it was noted in those cases that the holders of the notes were at all events subrogated in equity to the vendor's liens that were taken up with the proceeds of the notes in question; which evidently was by reason of former decisions noted in Jasper State Bank v. Braswell, 130 Tex. 549, 111 S.W.2d 1079, 115 A.L.R. 329, to the effect that even though the debt be barred and a foreclosure of the mortgage lien given as security therefor be void as against one who owned an interest in the property, but not made a party to the suit, yet such person cannot recover title against the purchaser or his vendee without payment of his pro rata part of the purchase money note that was discharged by the purchaser at foreclosure sale, if the purchaser seeks such equitable relief by proper pleadings.

As pointed out by appellant, defendants, neither by pleading or testimony, made any attempt to show that the extension agreement, and that, too, with an increase in the rate of interest, was made to avoid a threatened foreclosure of the original deed of trust, and therefore necessary to protect plaintiff's interest, as well as that of Helm, as was true in the cases cited. Apparently, on the trial of the case defendants relied solely on the provisions of Arts. 5520 and 5522, to support the right of Helm to extend the lien as to the entire mineral interest in the land, with no pleading invoking equitable relief growing out of payment of the mortgage lien on the entire property.

Whether or not the stipulation in the deed to Helm that he took the conveyance subject to the prior deed of trust executed by J. M. Senter and wife, amounted to an agreement to assume that indebtedness, a point briefed by both parties here, is unimportant and not necessary to be determined, because in Helm's extension agreement, he specifically agreed to pay that note, as modified in the particulars noted, and defendant Mortgage Company then accepted Helm as the principal obligor. And even though it be said that such acceptance, with its change in the obligation of the original note, operated to release J. M. Senter and wife from payment of the note as changed, yet plaintiff, Cohen, is in no position to complain of it since it could not affect his half interest in the minerals, even if not binding on the original makers.

As between the parties thereto, the extension agreement was supported by a sufficient consideration. Novosad v. Svrcek, 129 Tex. 34, 102 S.W.2d 393, and authorities there cited. But since, as we have heretofore concluded, Helm was without authority to bind plaintiff's title by such extension, it was inoperative as against plaintiff's one-half interest in the minerals in the land in controversy; his deed to which was of record prior to such extension.

For the reasons noted, plaintiff was entitled to a judgment against both defendants for his undivided one-half interest in all the oil, gas and other minerals in the land in controversy, including the same interest in all the royalties, bonuses and rents heretofore or hereafter accruing from the oil, gas and other mineral leases heretofore executed by the defendants, shown above; and a right to a personal judgment against the defendants respectively, for one-half of all sums realized by them from those leases as rents, royalties or bonuses, up to date of trial of the case; with the further right to a judgment decreeing that defendants take nothing against plaintiff on their plea over against him for title to the one-half interest claimed by him, but with the right in the defendants to a decree of title to all interests in the land other than those to which plaintiff is entitled, as above stated.

For failure of the court to render judgment in accord with the rights of the parties above indicated, the judgment rendered is reversed in its entirety. But the case will be remanded for further proceedings, as hereinafter shown.

Although the rights of defendants to hold title to plaintiff's half of the minerals in the land under the foreclosure sale by the substitute trustee were barred by the period of limitation fixed by Arts. 5520 and 5522, and therefore was no obstacle to

plaintiff's right of recovery of title to one-half of the minerals in the land, nevertheless, as held by our Supreme Court in Jasper State Bank v. Braswell, 130 Tex. 549, 111 S.W.2d 1079, 115 A.L.R. 329, plaintiff's title was subject to a claim of defendants in equity, if they had pleaded such for its proportionate part of the consideration paid by the Texas Land & Mortgage Company for its deed from the substitute trustee, in extinguishment of the entire prior lien given by J. M. Senter and wife, on February 27, 1920. In this case, as in the case just cited, defendants filed no plea on the trial of the case seeking such equitable relief; notwithstanding which, in keeping with that decision, the judgment will be reversed and the cause remanded, to afford defendants opportunity, if they desire, to file pleadings seeking equitable relief, arising from payment by the Mortgage Company of $10,000, in full of the balance then due on the original mortgage indebtedness; subject to the corresponding right of plaintiff to charge defendants with one-half of the proceeds realized by them heretofore and up to the time of trial, from the leases made by them to which plaintiff is entitled, as noted in foregoing portions of this opinion. If upon adjustment of those equities between the parties, a balance be shown in favor of either plaintiff or defendants, then a personal judgment will be rendered for that amount, with establishment and foreclosure of an equitable lien therefor on the interest of the party liable therefor.

If defendants shall upon remand of the case fail to file pleadings seeking an adjustment of the equities of the parties growing out of their dealings with the property, as above indicated, then plaintiff will be entitled to a judgment for title to the property sued for and one-half interest of the lessors in all leases made thereon, and one-half of all proceeds therefrom, free of any claim of defendants for an accounting and adjustment of their equities arising from the facts above indicated.

Evidence relevant to a proper adjudication of the equities above noted is the only evidence to be admitted on another trial; and on such trial the trial court, in addition to a determination of those equities, will render judgment in favor of the respective parties for the relief to which they were entitled, as held by us in the foregoing portions of this opinion.

Reversed and rendered in part, and remanded with instructions in part.