TEXAS LAND & MORTGAGE COMPANY, LIMITED, ET AL V. AARON COHEN.

No. 7786. Decided February 25, 1942.
Rehearing overruled March 18, 1942.
(159 S. W., 2d Series, 859.)

*E. L. Klett,* of Lubbock, for Texas Land & Mortgage Company, and *E. G. Thornton,* of Olney, and *Black, Graves & Stayton,* of Austin, for E. W. Hunt, plaintiffs in error.

The recorded indebtedness being in full force and effect at the time plaintiff Cohen purchased the property, he bought same with notice and subject to said indebtedness, and having purchased subject to said debt he had no right to object to a renewal of the obligation and lien, but bought subject to the lawful rights of the parties at interest to renew same without the necessity of obtaining his consent. Crow v. Willard, 110 S. W. (2d) 161; Spencer & Co. v. Texas Pac. Coal & Oil Co., 91 S. W. (2d) 411; North Texas Bldg. & Loan Assn. v. Elder, 66 S. W. (2d) 379.

*T. R. Boone, Kearby Peery, Charles C. McDugald,* all of Wichita Falls, and *Fred T. Arnold,* of Graham, for defendant in error.

On the proposition that a note may be extended by the party obligated to pay the indebtedness at the time of the extension and not afterward, and that the *then owner* of the land, whether assuming the indebtedness or not, may enter into a valid contract of extension. Jasper State Bank v. Baswell,

130 Texas 549, 111 S. W. (2d) 1079; Kiel v. Staber, 116 S. W. (2d) 809; Howell v. Townsend, 217 S. W. 975.

*Carl Runge* and *John M. Jamison,* of Houston, filed amicus curiae brief, on behalf of the Federal Land Bank of Houston.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

Aaron Cohen instituted this suit as an action in trespass to try title to recover 1/2 of the minerals in 3068.16 acres of land in Archer County and also to recover approximately $20,000.00 as the value of his share of the minerals sold. The Texas Land & Mortgage Company, Ltd., and E. W. Hunt were named as defendants. In a trial before the court without a jury judgment was rendered denying plaintiff any recovery as against either of the defendants and vesting in the defendant Hunt title to the mineral interests sued for by plaintiff. That judgment was reversed and rendered in part and reversed and remanded with instructions in part by the Court of Civil Appeals. 137 S. W. (2d) 806.

J. M. Senter and wife are the common source of title. On February 29, 1920, Senter and wife executed a deed of trust to A. G. Wood, trustee, to secure the Mortgage Company in the payment of one note for $5,000.00 and one note for $17,-500.00, each due February 1, 1930. That instrument was duly recorded in the records of Archer County on March 4, 1920. On February 1, 1923, Senter and wife conveyed 1/2 of the minerals in and under all of said land to Aaron Cohen in consideration of the sum of $8,000 paid in cash. No mention was made in the deed of the encumbrance against the property, but the deed of trust had been theretofore duly recorded and Cohen therefore necessarily acquired his mineral interest subject thereto. It is not questioned that his conveyance was in fact subject to such lien. Thereafter, on July 24, 1923, Senter and wife conveyed all of said land to S. G. Helm. That conveyance carried with it both the surface right and the 1/2 mineral interest then owned by the grantor. The consideration recited in said deed was $9,000.00 cash and the further consideration that the grantee took the property subject to certain described liens, including the one above mentioned. That deed was duly acknowledged and filed for record on July 29, 1923.

On February 19, 1930, Helm and wife, who then owned all of said land except the 1/2 mineral interest owned by Cohen, entered in to a contract of extension with the Mortgage Company in which it was recited that Helm had assumed the two notes above mentioned for the principal sum of $5,000.00 and $17,500.00, respectively, in the deed from Senter and wife to him above referred to. Said extension agreement further recited that the $5,000.00 note had been paid. By that contract the time of payment of the $17,500.00 note was extended to February 1, 1935, and Helm and wife agreed to pay same on that date. Cohen did not join in the contract of extension. On February 5, 1935, all of said land was sold at trustee's sale by a substitute trustee duly appointed under the terms of said original deed of trust, and the Mortgage Company was the purchaser at such sale. January 8, 1938, the Mortgage Company sold said land to Hunt for a cash consideration of $27,-500.00, and thereafter Hunt executed various mineral leases upon the land.

It is Cohen's position that the trustee's sale was void as to the 1/2 mineral interest purchased by him from Senter under Articles 5520-22, R. C. S., for the reason that both notes for which the original deed of trust was executed as security were due and payable on February 1, 1930, and were conclusively presumed to have been paid prior to February 5, 1935, the date of the trustee's sale, and that, as to his interest, the contract of extension was void and did not therefore toll the running of the statute. It is the position of Hunt and the Mortgage Company that the extension agreement was binding upon Cohen's interest, and therefore the entire fee in the land passed to the Mortgage Company by the trustee's deed and later to Hunt by the deed from the Mortgage Company to him.

■ A decision of this question rests upon a construction of Articles 5520-22, R. S. 1925, as later amended, and more particularly upon a construction of Article 5522. That article appeared in Revised Statutes of 1911 as Article 5695. It provided that the contract of extension be signed and acknowledged "by the parties to the contract of extension." It was amended by the Acts of 1913, Regular Session, Chapter 123, but no change was then made in the language quoted next above. That same Legislature, however, in its First Called Session, Chapter 27, amended the article so as to provide that such contract of extension might be "signed and acknowledged as provided for in the law relating to the execution of deeds of conveyance

*by the party or parties obligated to pay such indebtedness as extended."* (Italics ours.) Thereafter, the article was further amended by the Regular Session of the 39th Legislature, 1925, page 216. It was effective in its amended form when the contract of extension in this case was executed. No change was made by the amendment in the language next above quoted, but the following provision, among others, was added by such amendment:

"Provided the owner of the land and the holder of the note or notes may *at any time* enter into a valid agreement renewing and extending the debt and lien, so long as it does not prejudice the rights of lien holders or purchasers subsequent to the date such liens became barred of record under laws existing prior to the taking effect of, or under this Act; as to all such lien holders or purchasers any renewal or extension executed or filed for record after the note or notes and lien or liens were, or are, barred of record and before the filing for record of such renewal or extension, such renewal or extension shall be void." (Italics ours.)

While the quoted provision designates "the owner of the land and the holder of the note or notes" as the parties who are authorized to make a valid contract of extension, we think it is manifest that the Legislature did not, by adding that proviso, intend to change the meaning of the article as it had theretofore been interpreted by the court, but rather that it intended merely to make clear a question about which there had been some uncertainty. The legislative purpose and intent is reflected by the emergency clause of the 1925 amendment, which reads as follows:

"The fact that certain provisions of Article 5693 and 5695, Revised Civil Statutes of Texas, 1911, as amended, have been held by the Supreme Court of Texas to be unconstitutional while sustaining the validity of other parts of said articles as amended, and the further fact that there exists conflicting holdings by the various courts of civil appeals of Texas as to whether or not the owners of the land and the holder of notes secured by deeds of trust or other mortgages and vendor's liens, may make valid renewals and extensions thereof *after the same have apparently become barred of record* under the law as now written, creates an emergency, etc." (Italics ours.)

Had the legislative intent been to limit the right to make an extension agreement to owners of the land, it would have

stricken from the article to which the amendment attached the provision that such contract might be executed "by the party or parties obligated to pay such indebtedness as extended" and not have left that provision undisturbed. The amendatory provision was enacted primarily for the protection of purchasers and lienholders from debts that appeared to be barred of record. T. A. Hill State Bank v. Schindler, 33 S. W. (2d) 833. In the case of Wilkinson v. First National Bank (Com. App.), 13 S. W. 346, the purpose of that amendatory provision was construed in this clear language:

"In this clause of the statute is to be found authority for the making, by mortgagor, of valid agreements, independently of these statutes and in disregard of their requirements, for the renewal or extension of the mortgage debt and lien, and of the power of sale conferred by the mortgage. The sole prescribed limitation of the validity and legal effect of his agreements in this respect has exclusive reference to those who purchase the mortgaged premises, or who acquire liens thereon, more than four years after the maturity date shown in the mortgage and while there appears of record no extension agreement, duly executed in conformity to the requirements of these statutes, showing the mortgage lien still to be subsisting. This limitation is expressed in the statute; no other one is implied. * * *"

We reaffirm that construction of the amendment, and since the contract of extension in this case was made before the notes were barred, such amendment will not be further taken into account.

■ It is established by decisions of this court that either the original mortgagor or his vendee who has assumed the payment of his indebtedness may make a renewal agreement binding upon subsequent purchasers or lienholders without their joinder or consent. Among the many cases which might be cited in support of this conclusion we note the following: Novosad v. Svrcek, 129 Texas 34, 102 S. W. (2d) 393; Caffarelli Bros. v. Pearce (Com. App.), 34 S. W. (2d) 813; First National Bank v. Arnold, 133 Texas 462, 128 S. W. (2d) 1151; Wilkinson v. First Natl. Bank, 118 Texas 202, 13 S. W. (2d) 346; Howell v. Townsend, 217 S. W. 975 (er. ref.).

If one who has assumed the indebtedness is authorized to enter into a renewal agreement, no reason is perceived why one who purchases subject thereto should not be held to have

the same authority. These statutes (Art. 5520 et seq.) do not relate to the subject of personal liability for debt, but rather to the subjects of liens and the rights of those who purchase incumbered property or acquire liens thereon. One who purchases subject to a lien and who has not parted with the land has property rights to be protected and preserved by such extension just as certainly as has one who assumes the indebtedness. The statute does not require that the contract be executed by the party or parties obligated to pay the original indebtedness, but by the party or parties obligated to pay such indebtedness "as extended." When the Mortgage Company accepted the contract of extension and renewal Helm thereby became obligated to pay such indebtedness "as extended" and was therefore, under the express language of the statute, a person authorized to keep alive the lien on all of the land as against lienholders and purchasers whose interests were acquired subject to the indebtedness.

We have not overlooked the fact that the 42nd Legislature, at its Regular Session, Chapter 136, amended Article 5520 and in such amendment included this provision:

"The lien created by deeds of trust or other mortgages may be extended by an agreement in writing by the *party or parties primarily liable* for the payment of such indebtedness, and filed and recorded in the manner provided for the acknowledgment and record of conveyance of real estate." (Italics ours.)

That amendment was enacted in 1931, long after the contract of extension in the instant case was executed, and can therefore have no bearing upon the question here for decision. We express no opinion as to the effect, if any, which such amendment to Article 5520 may have upon the construction of Article 5522 with reference to the question here involved. We merely take note of the status of the matter at this time in order that it may be disclosed that this opinion is written without reference to the said amendment.

The case of Home Owners Loan Corporation v. Cilley, 125 S. W. (2d) 313, (er. ref.) is cited and relied on by Cohen. The facts in that case are somewhat complicated, but it would appear that they differ from those involved in the instant case in several particulars. In that case the tenant in common who executed the contract of extension owned a one-third interest in the land and by express agreement owed only one-third of

the indebtedness against same. The first contract executed by him extended the lien on his interest only. Later he executed a renewal to as assignee of the lien and notes who had acquired same after his first renewal was executed, which contract purported to renew the lien on the entire tract of land. Whether or not the two cases may be distinguished in principle on the facts, we need not decide, for an inspection of the application for writ of error in the Cilley case discloses that the grounds upon which we are deciding this case were not urged or considered in that case, and it will not, therefore, be regarded as an authority with respect thereto.

■ The Court of Civil Appeals held that the extension agreement was void "as against plaintiff's suit" because same was not accepted in writing by the Mortgage Company within the provisions of the statute of frauds, Art. 3995. With this conclusion we do not agree. Art. 5522 directs that the contract of extension be "signed and acknowledged as provided for in the law relating to the execution of deeds of conveyance by the party or parties obligated to pay such indebtedness as extended." There is no requirement that the contract be executed by the mortgagee and it is the settled rule that the recording of the instrument was prima facie evidence of the delivery by the grantor and acceptance by the grantee. Clegg v. Brannan, 111 Texas 367, 234 S. W. 1076; see also authorities cited in 14 Tex. Jur., p. 838, sec. 74. The Court of Civil Appeals based its decision on this question, in part at least, upon the circumstance that the written contract of extension contained the provision that "by the acceptance hereof said Mortgage Company agrees to the foregoing. * * *" That recital added nothing to the instrument. It was but a statement of that which the law would imply in its absence. A contract of extension is not effective until accepted by the mortgagee.

The argument is advanced by Cohen that the extension agreement on its face that the lien was extended only on the estate held by the Helms and not on his mineral interest. This contention is not sustained. The contract refers to the original deed of trust and then provided:

"That said last note and the aforesaid Deed of Trust securing same shall from this date have the same force and effect they would have had if said notes had been originally payable at the date to which it is hereby extended, with interest

as above specified, and had been so described in said Deed of Trust."

Cohen contends that the following language of the contract supports his position on this point:

"* * * It is expressly agreed and understood that we, said S. G. Helm and wife, Evelyn Helm, in order to further secure the last note above described do hereby convey, in trust to James C. MacDonald, Trustee, all rights that we, or either of us have in any and all royalties arising or accruing out of, or under, any lease, or leases now existing on the land above referred to, or any part thereof, and of record in the County where said land is situated."

That language had the effect of making clear that, as further security for the lien, the royalties which might be payable to the Helms under any outstanding oil lease or leases should be conveyed to MacDonald, Trustee. To our minds, that language in no sense limited the security of the original deed of trust, but merely provided a method for applying the royalties towards the extinguishment of the indebtedness.

It is further contended that by the language from the extension contract above quoted James C. MacDonald was made substitute trustee in lieu of A. G. Wood, the trustee named in the original deed of trust. This contention is not sustained. The extension agreement merely constituted MacDonald a trustee of royalties that might be paid to the Helms. He was given no authority to act as trustee under the deed of trust and sell the premises under the power there conferred, and the contention that he was the proper person to act in the premises is overruled.

Another point presented is the claim that there was such a change in the original note or indebtedness pertaining to the rate of interest and manner of payment as to discharge the original indebtedness under the Negotiable Instruments Law and thereby release Cohen's interest from the lien. The contention, to our minds, is untenable. We are here dealing with specific statutes with reference to limitation as applied to liens on real estate and the method of extending such liens, and the provisions of such statutes must control the rights of the parties.

Our conclusion upon the case as a whole is that the contract of extension executed by Helm and wife and accepted by the Mortgage Company had the effect of keeping alive the lien as it had theretofore existed upon all of the land in suit, including the mineral interest of Cohen, and that title to Cohen's interest along with the interest of Helm passed to the Mortgage Company by the deed of the substitute trustee and is now owned by Hunt as the vendee of said Mortgage Company.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

Opinion adopted by the Supreme Court February 25, 1942.

Rehearing overruled March 18, 1942.