WILLIAM W. MCKINNEY ET AL V.
ORVILLE D. WHITE ET UX

No. A-5043. Decided July 27, 1955.
(281 S.W. 2d Series 327)

*Allen Melton* and *James R. Ellis,* both of Dallas, for petitioners.

The trial court erred in concluding that the sale under the deed of trust extinguished the mineral deeds in controversy which had been executed subsequent to the time the original indebtedness was created as effectually as if there had been a foreclosure suit and the owners of the mineral interest had been made a party to the suit, and the Court of Civil Appeals erred in failing to consider petitioners point of error to that effect. Russell v. Kirkbride, 62 Texas 455, 457; Williamson v. Conner, 92 Texas 581, 50 S.W. 697; Wylie v. Hays, 114 Texas 46, 263 S.W. 563.

*Richard F. Stovall,* of Floydada, for respondents.

In response cited Herbert v. Denman, 44 S.W. 2d 441; Texas Land and Mortgage Company v. Cohen, 138 Texas 464, 159 S.W. 2d 859.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

This a statutory action in trespass to try title to 160 acres of land in Dickens County brought by respondents, Orville D. White and wife, against petitioners, William W. McKinney, W. J. Danforth and wife, Marian G. Danforth, R. L. Gass and wife, Annette Gass, C. C. Dowlen and wife, Velma Dowlen, and other parties who filed disclaimers. A judgment in favor of respondents for title and possession of the land was affrmed by the Court of Civil Appeals. 278 S.W. 2d 553. The real controversy is over the ownership of undivided mineral interests in the land. Petitioners claim no interest in the surface.

It was stipulated that the common source of title was Eric P. Swenson. By deed dated October 19, 1916, Swenson and

others conveyed the land to Lee W. Bilberry, retaining a vendor's lien to secure the payment of six purchase money notes made payable to S. M. Swenson and Sons. Bilberry conveyed the land to T. H. Tallant and wife by deed dated May 28, 1917, in which the Tallants assumed the payment of the vendor's lien notes. On March 30, 1919, T. H. Tallant and wife conveyed ½ the minerals to A. T. Reed, E. C. Edmonds, and N. E. Porter, which deed was duly recorded. Thereafter, on May 12, 1919, T. H. Tallant and wife conveyed the land to J. F. Tallant, without excepting any mineral interest from the grant or mentioning the mineral deed to Reed et al. As part of the consideration, J. F. Tallant assumed payment of the outstanding vendor's lien notes. On February 11, 1920, J. F. Tallant conveyed the land to G. M. Williamson, who also assumed the payment of the vendor's lien notes. On January 29, 1921, S. M. Swenson and Sons transferred the vendor's lien notes to the American National Insurance Company, the transfer reciting that the Swensons "do sell, transfer and assign, without recourse on us, unto said American National Insurance Company, the said notes (describing them), together with the vendor's lien securing the payment thereof. * * *" On March 1, 1921, Williamson executed a deed of trust to Shearn Moody, Trustee for the American National Insurance Company "for the purpose of taking up and extending" the above notes. On November 5, 1924, G. W. Williamson and wife conveyed the land to P. H. Miller and wife. On November 21, 1924, Miller and wife conveyed the land to J. C. Guthery and wife. On April 15, 1926, the Gutherys executed a deed of trust to H. W. Ferguson, Trustee for Dallas Joint Stock Land Bank to secure the bank in the payment of a note of even date given in renewal and extension of the balance due on the note executed by Williamson to the American National Insurance Company and the balance due on a note executed by Guthery to Miller, which notes had been transferred to said bank. On March 3, 1936, the land was sold by a substitute trustee under the powers contained in the deed of trust to the Dallas Joint Stock Land Bank, at which sale the bank became the purchaser. Thereafter, the bank conveyed to D. G. Harris and wife. Harris and wife conveyed to Frank D. Hale and wife, who, in turn, conveyed to respondents, White and wife. It is thus shown that whatever title the respondents have in the land came through the sale under the deed of trust.

Turning now to the title of petitioners, the record discloses, as above stated, that while T. H. Tallant and wife were the owners of the land they executed a deed to ½ of the minerals to Reed, Edmonds, and Porter, Whatever title petitioners have

came through that deed. Edmonds filed a disclaimer as to his 1/3 of the 1/2 mineral interest.

The petitioners claim under deeds from Reed and Porter and under Reed's will. N. E. Porter conveyed his entire 1/6 interest in the minerals to Bess Porter, who, in turn, conveyed the same interest to Eva D. Porter. Eva D. Porter conveyed a 1/12 interest to petitioner, William W. McKinney. She filed a disclaimer in the suit. It thus appears that McKinney's claimed interest is 1/2 of the Porter 1/6 interest, or 1/12, of the minerals.

Turning next to the claim of petitioner Danforth, we find that A. T. Reed, who acquired a 1/6 interest in the minerals under the deed from T. H. Tallant, conveyed to R. L. Gass and wife "1/3 of 1/2 interest in 1/2 interest" in and to said minerals. That is a 1/12 interest. But Gass conveyed to Danforth the same interest expressed in his conveyance as "1/2 of our 1/3 of 1/2 interest" in these minerals. By that deed Gass parted with all the interest which he acquired through the A. T. Reed deed. However, Reed later died testate, devising his interest in these minerals to his wife and two daughters, Mrs. Dowlen and Mrs. Gass. Thereafter, Reed's widow, joined by her then husband, and Velma Dowlen, joined by her husband, deeded that interest to Gass and wife. It thus appears that petitioners, William W. McKinney, W. J. Danforth and wife, Marion Danforth, and R. L. Gass and wife, Annette Gass, together own or claim 3/12ths of these minerals. The record does not disclose that petitioners, C. C. Dowlen and wife, Velma Dowlen, own any interest in the minerals.

The question of law to be decided is whether or not the trustee's sale passed to the purchaser at that sale the mineral estate conveyed by T. H. Tallant to Reed, Edmonds, and Porter. It will be kept in mind that that mineral deed was executed prior to the execution of any deed of trust. At that time Swenson et al owned the superior title to the land, and as such owners had the right to rescind the sale and repossess the property, or affirm the sale and foreclose their lien through a judicial proceeding. Stone Cattle and Pasture Co. v. Boon, 73 Texas 548, 11 S.W. 544.

After that mineral deed was executed, Swenson and Sons transferred the purchase money notes and the vendor's lien to the American National Insurance Company, but, as noted above, did not transfer the superior title. It is well settled that an assignment of purchase money notes and the vendor's lien secur-

ing same does not convey to the assignee the superior title to the land. Stephens v. Matthews' Heirs, 69 Texas 341, 6 S.W. 567; Farmers' Loan Trust Co. v. Beckley, 93 Texas 267, 54 S.W. 1027; Cleveland State Bank v. Gardner, 121 Texas 580, 50 S.W. 2d 786; Robinson v. Smith, Texas Civ. App., 130 S.W. 2d 381, error refused.

By that assignment the insurance company acquired only the right to obtain a judgment on the notes with a foreclosure of the vendor's lien. Obviously, it could not convey any greater right, and the right of the Dallas Joint Stock Land Bank could rise no higher than that of the insurance company. When the deed of trust was executed by Williamson, he was not the owner of the 1/2 mineral estate conveyed by Tallant to Reed et al. Not being the owner of that interest, he could not fix a deed of trust lien thereon. Neither was Guthery the owner of that interest when he executed a deed of trust to the Dallas Joint Stock Land Bank, under the powers of which the land was sold by the substitute trustee. Since no one with authority to do so executed a deed of trust lien upon the 1/2 mineral estate sold to Reed et al, that interest could not have passed by the deed of trust sale by the substitute trustee for the Dallas Joint Stock Land Bank. We assume that the bank could have come into court and declared upon its note as a renewal of the original purchase money notes given to Swenson and Sons and procured a foreclosure of the lien on this interest. In that proceeding, in order to be entitled to a foreclosure upon the mineral interest sold to Reed et al, the record owners thereof would have been necessary parties.

■ Reduced to its simplest form, the situation is this: The property has been sold under the powers contained in a deed of trust. That deed of trust did not cover the 1/2 mineral interest conveyed to Reed et al, because both that deed of trust and the deed of trust executed by Williamson to the American National Insurance Company were executed by parties who did not own that 1/2 interest. They had no authority to fix a deed of trust lien thereon, and a sale under the powers contained in either of those deeds of trust could not pass the interests which petitioners hold under the deed to Reed et al.

Respondents rely on Texas Land & Mortgage Co. v. Cohen, 138 Texas 464, 159 S.W. 2d 859. In that case a deed of trust lien existed against the land at the time an interest in the minerals was conveyed, and the question presented was the right of a subsequent purchaser of the land who took same subject to

the deed of trust lien to renew the indebtedness under the provisions of Article 5520 and 5522 of the Revised Statutes. The question governing our decision of this case was not presented in that case.

This brings us to a consideration of the character of judgment to be rendered. Except as to the 1/12 interest in the minerals standing in the name of petitioner William W. McKinney, the 1/12 interest standing in the names of W. J. Danforth and wife, Marion Danforth, and the 1/12 interest standing in the names of R. L. Gass and wife, Annette Gass, the judgment of the trial court will not be disturbed. In so far as that judgment divested those named petitioners of title to their respective interests in these minerals, that judgment and the judgment of the Court of Civil Appeals affirming same are reversed, and judgment is here rendered that respondents take nothing as to them.

Undisturbed in part and reversed and rendered in part.

Opinion delivered July 27, 1955.