**Affirmed and Memorandum Opinion filed August 30, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00447-CV

---

### RONALD D. SMITH AND KIMBERLY SMITH, Appellants

### V.

### KINGDOM INVESTMENTS, LIMITED; CARL/WHITE TRUST; ANITA COLLINS; PAUL O'FARRELL; GLADYS A. STONE; EDNA A. AVITTS; PRISCILLA WELLS; JOHNNY M. GLOSSON; ELLEN AVITTS MANAGEMENT TRUST; CONNIE B. BROWN; FLOYD N. BROWN, JR.; ONA MAE WORDEN; STANLEY AND ELOISE BROWN REVOCABLE TRUST; CARMIE J. BROWN LIVING TRUST; CHARLES RICHARD AVITTS; KATHERINE AVITTS GIPSON; MARGARET L. CLARK; AND THOMAS E. AVITTS, Appellees

---

**On Appeal from the 239th District Court
Brazoria County, Texas
Trial Court Cause No. 86021-CV**

---

## MEMORANDUM OPINION

In this dispute over the ownership of oil and gas royalties, appellants Ronald D. and Kimberly Smith (the Smiths) argue that the trial court erred in awarding a

disputed royalty interest in lots 36 and 43 to the appellees.[1] The Smiths undisputedly own the surface of lots 36 and 43. Appellees assert the Smiths own 1/6 of 1/4 of a 1/8 royalty pursuant to the oil and gas lease known as the Avitts B Lease,[2] which is consistent with the manner in which the disputed royalty interest

---

[1] Appellees are Kingdom Investments, Limited; Carl/White Trust; Anita Collins; Paul O'Farrell; Gladys A. Stone; Edna A. Avitts; Priscilla Wells; Johnny M. Glosson; Ellen Avitts Management Trust; Connie B. Brown; Floyd N. Brown, Jr.; Ona Mae Worden; Stanley and Eloise Brown Revocable Trust; Carmie J. Brown Living Trust; Charles Richard Avitts; Katherine Avitts Gipson; Margaret L. Clark; and Thomas E. Avitts. On December 15, 2020, we granted, in part, appellee Kingdom Investments' motion to restyle the case as reflected above.

Modeen O'Farrell was a party in the trial court. She died after the case had been tried but before rendition of judgment. Pursuant to Texas Rule of Civil Procedure 156, judgment was rendered as though she were alive. This court granted Paul O'Farrell's motion to substitute as a party for Modeen O'Farrell. Paul died in September 2020. Pursuant to Texas Rule of Appellate Procedure 7.1, we adjudicate this appeal as if he were alive.

Flora N. Young was a party in the trial court. She died after the case had been tried but before rendition of judgment. The trial court substituted the "Estate of Flora N. Young" as a party in the judgment. This court granted a motion to substitute Priscilla Wells for the "Estate of Flora N. Young."

Floyd N. Brown, Jr. was a party in the trial court. He died after the case had been tried but before rendition of judgment. Pursuant to Texas Rule of Civil Procedure 156, judgment was rendered as though he were alive.

Charles Richard Avitts died intestate in October 2020. Pursuant to Texas Rule of Appellate Procedure 7.1, we adjudicate this appeal as if he were alive.

Margaret L. Clark was a party to the interpleader action. She died during the pendency of the case in the trial court. Judgment was rendered in favor of the "Estate of Margaret L. Clark." Two of Clark's four adult children filed a motion to substitute a party in this court stating they now own all of Margaret Clark's interest in the Avitts B Lease. Because no probate proceeding has been opened and because this court has no jurisdiction to determine Margaret L. Clark's heirs or the disposition of her property, we denied the motion. Pursuant to Texas Rule of Appellate Procedure 7.1, we adjudicate this appeal as if she were alive.

[2] The dispute in this lawsuit does not involve the mineral ownership of lots 36 and 43, just the royalty interest which has been separately conveyed. *Cf. Luckel v. White*, 819 S.W.2d 459, 463 (Tex. 1991) ("A royalty interest is an interest in land that is a part of the total mineral estate. The royalty interest is a property interest that is one of the rights and attributes comprising the mineral estate; the other rights and attributes include the right to receive delay rentals, the right to share in benefits secured from the lessee such as production payments and the like, the right to develop and produce minerals, and the executive right. A royalty interest derives from the grantor's mineral interest and is a nonpossessory interest in minerals that may be separately alienated.") (internal citations omitted). A royalty deed is, in general, subject to the same legal

2

has been paid to the Smiths and the Smiths' predecessor-in-interest for several decades. However, the Smiths argue that they own a larger royalty interest by virtue of the conveyance of lots 36 and 43 from Ronald Smith's grandfather, W.H. Avitts Jr. a/k/a Henry Avitts (Henry), to the Smiths without a mineral reservation. The resolution of this dispute turns primarily on whether Henry conveyed the disputed royalty interest into a trust for the benefit of his daughters.

The Smiths raise six issues on appeal, and all six of the Smiths' issues assert the final judgment of the trial court was not supported by legally- or factually-sufficient evidence. We affirm the judgment of the trial court as challenged on appeal.

## I.   BACKGROUND

Denbury Onshore, LLC is the operator of the West Hastings oil and gas unit, which is located in Brazoria County, Texas. The West Hastings oil and gas unit includes the Avitts B Lease, of which lots 36 and 43 are part, and which governs the royalty interests at issue in the underlying lawsuit.

Denbury Onshore filed an interpleader action in 2016 to resolve the disputed royalty interest claimed by the Smiths and deposited the proceeds attributable to this lease royalty, then $83,063.24, in the court's registry. The Smiths, defendants in the interpleader action, filed a cross-claim against the appellee defendants, and/or their predecessors in interest, seeking a declaratory judgment that the Smiths were entitled to all of the disputed lease royalty and all of the proceeds in the court's registry. The appellees argued in response that the Smiths were not entitled to any part of the disputed royalty interest.

---

rules for construction as a mineral deed. *Id*. at 464.

## The property in dispute

W.H. Avitts purchased lot 43 in 1928 with no mineral reservation.[3] In 1932, he and his wife, Annie, conveyed an undivided half interest in lot 43 to their son, Henry, although title was not to pass until after the death of both W.H. and Annie. In 1936, W.H. and Annie conveyed an undivided 1/4 royalty interest in lot 43 to Henry as his sole and separate property although Henry was married at the time.

W.H. and Henry purchased lot 36 in 1929 with no mineral reservation. At the time Henry acquired his interest in lot 36, he was unmarried and owned title to the property as his separate property.

## The Avitts B Lease

In 1934, W.H. and Annie, and Henry and his wife, Ophelia, entered into an oil and gas lease to allow for production on lots 36 and 43.[4] The lease provided for a 1/8 royalty to be paid on oil and gas produced and saved from the land. Subsequently, W.H., Annie, Henry and Ophelia sold 1/4 of the 1/8 royalty interest in lots 43 and 36 to Standard Oil Company and another 1/4 of the 1/8 royalty interest in lots 43 and 36 to Gillett Hill.

## The wills of W.H. and Annie

In 1944, W.H. died testate. In his will, he devised the surface interest in all his real property to Henry subject to a life estate for Annie. Although the prior conveyances of W.H.'s and Annie's royalty interest in lots 36 and 43 are not reconcilable with W.H.'s and Annie's probate disposition of that interest, we only

---

[3] W.H.'s wife, Annie, is not mentioned in this deed. Later conveyances affecting lot 43 are in the name of both W.H. and Annie. For purposes of our analysis, we presume it was a community-property interest as this is not a disputed issue in the case.

[4] Although Henry's ownership at the time was as separate property, Ophelia is included on the oil and gas lease, as well as the sale of subsequent royalty interests.

set out the relevant conveyances and actions in this section. The inconsistencies between these conveyances set the stage for the legal issues in this case which we discuss below. With respect to mineral interests, W.H. devised a life estate in all the royalty interests the couple had owned to Annie with a remainder to their six children in equal shares.

However, after the probate of W.H.'s estate, Annie conveyed via gift deed 1/28 of the 1/8 royalty on lots 36 and 43 to each of her six children (1/7 x 1/4), retaining 1/28 interest for herself. On Annie's death in 1964, her will, which mirrored W.H.'s will, was admitted to probate and her 1/28 royalty interest was devised equally among her six children. After Annie's death, each of the Avitts children, including Henry, received 1/6 of 1/4 of the 1/8 royalty interest in lots 36 and 43.

## Henry and Ophelia's trust

In 1974, Henry and Ophelia created a trust for the benefit of their five daughters. Under the trust agreement, Henry and Ophelia conveyed to the trustee a royalty interest in lots 36 and 43 "being a 0.03125 royalty interest in said lease . . . being known as the W. H. Avitts 'B' lease on real property described as Lots 36 and 43[.]"[5] The trust agreement describes the royalty interest conveyed into the trust as a community-property interest, and expressly excluded the separate property interest of Henry Avitts described as "a 0.0052083 royalty interest in the 'B' lease."[6] The trust was subsequently terminated in 1988, and the 0.03125 royalty interest in lots 36 and 43 was distributed in equal shares to Henry and Ophelia's daughters.

---

[5] This calculation reflects a 1/4 of the 1/8 royalty interest.

[6] This calculation reflects a 1/6 of 1/4 of the 1/8 royalty interest.

**Deed to the Smiths**

Henry and Ophelia conveyed lots 36 and 43 to the Smiths in 1996, but without any mineral reservation. Therefore, any mineral interest owned by Henry and Ophelia in either lot 36 or 43 in 1996 was conveyed to the Smiths. The Smiths asserted their challenge to the distribution of royalty payments in 2013.

**Trial court proceedings**

Denbury's plea in interpleader was granted and Denbury was dismissed from the lawsuit having deposited the suspended royalty payments into the registry of the court. Following a bench trial in 2019 on the Smiths' cross-claims, the trial court rendered a final judgment in favor of appellees on April 27, 2020. The trial court concluded that appellees were entitled to all of the funds in the registry of the court and rendered a take-nothing judgment on the Smiths' cross-claims. Though costs of court were assessed against the Smiths, no attorney's fees were awarded. The trial court also signed findings of fact and conclusions of law, which the Smiths challenge in this appeal as not supported by legally- or factually-sufficient evidence.

## II. ANALYSIS

### A. Standard of review

In an appeal from a bench trial, the trial court's findings of fact have the same force and dignity as a jury verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). We review the trial court's findings using the same standards of review applicable to a jury's verdict. *See MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009).

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every

reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. Our task is to determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* As long as the evidence at trial "would enable reasonable and fair-minded people to differ in their conclusions," we will not substitute our judgment for that of the factfinder. *See id.*

When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). A court of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.* at 407. We may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Id.*

An appellant may not challenge a trial court's conclusions of law for factual sufficiency, but we may review the legal conclusions drawn from the facts to determine their correctness. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). "If the reviewing court determines a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal." *Id.*

## B. Henry's royalty interest in lot 36

In issue 1, the Smiths argue that the trial court erred by not recognizing that Henry's royalty interest in lot 36 was his separate property because he acquired the property before he was married.

The trial court's finding of fact states "W.H. Sr. and Henry received title to

7

Lot 36 in that certain Sheriffs Deed dated May 7, 1929, and recorded at Vol. 214, Pg. 128, Official Public Records of Brazoria County." None of the trial court's findings of fact or conclusions of law address Henry's marital status at the time he acquired lot 36, nor do they address the characterization of the property (as separate or community) at the time of its acquisition. Separate property is the property owned before marriage as well as "property acquired . . . during marriage through gift, devise, or descent." Tex. Fam. Code Ann. § 3.001; *see also Norris v. Vaughan*, 260 S.W.2d 676, 679 (Tex. 1953) (royalty from oil and gas produced from separate property remains separate property); *see generally* Tex. Const. art. XVI, art. 15. The Smiths correctly argue the trial court did not address the characterization of the property in its findings of fact and conclusions of law. However, because we conclude as discussed below, that Henry intended to transfer into the trust his 1/4 of the 1/8 royalty in both lots 36 and 43 regardless of its characterization as separate or community, this omission did not result in an improper judgment.

We overrule issue 1.

## C. Henry's royalty interest in lot 43

In issue 2, the Smiths argue the trial court erred by failing to recognize that Henry's interest in lot 43 was conveyed to him as his sole and separate property. The parties do not dispute there were two conveyances affecting Henry's royalty interest in lot 43 prior to W.H.'s death:

1. In 1932, W.H. and Annie conveyed an undivided 1/2 interest in lot 43 to Henry Avitts (title to pass following the death of W.H. and Annie). This conveyance predates the oil and gas lease and sale of royalty interests.

2. In 1936, W.H. and Annie conveyed an undivided 1/4 royalty interest to Henry as his sole and separate property.

8

The trial court's findings of fact and conclusions of law address the 1932 conveyance from W.H. and Annie, but they do not memorialize the 1936 deed in which W.H. and Annie conveyed to Henry 1/4 of 1/8 royalty in lot 43. We agree with the Smiths that the trial court did not recognize or address Henry's separate property interest in the oil and gas royalty from lot 43. However, because we conclude as discussed below that Henry intended to transfer into the trust his 1/4 of the 1/8 royalty in both lots 36 and 43 regardless of its characterization as separate or community property, this omission did not result in an improper judgment.

We overrule issue 2.

## D. Henry conveyed his separate property into the trust

In issue 3, the Smiths argue the trial court erred in finding that Henry conveyed his separate property into the trust. Though the trial court does not describe the disputed royalty interest as separate property, the Smiths argue the legal effect of the trial court's findings of fact and conclusions of law is the determination that Henry conveyed his separate property into the trust.[7]

### 1. What did Henry own?

Before we address the property conveyed into the trust, we must determine what Henry owned at the time the trust was created. With respect to the royalties on lot 36, Henry owned 1/4 of the 1/8 royalty as his separate property.

The question of lot 43 is more complex because the Smiths allege that Henry owned 1/4 of the 1/8 royalty interest as his separate property, as well as another 1/4 of 1/8 royalty interest as his community property. We begin with the 1932 deed from W.H. and Annie to Henry.

---

[7] The trial court's findings of fact state that the royalty interest was community property because Henry and Ophelia signed the oil and gas lease while they were married. While this statement is erroneous, it did not lead to an improper judgment and does not require reversal.

9

### a. Henry received a future interest in the 1932 deed

In Texas, deeds are construed to confer upon the grantee the greatest estate that the terms of the instrument will allow. *Lott v. Lott*, 370 S.W.2d 463, 465 (Tex. 1963). A deed will pass whatever interest the grantor has in the land, unless it contains language showing the intention to grant a lesser estate. *Sharp v. Fowler*, 252 S.W.2d 153, 154 (Tex. 1952). When conveying a future or expectancy interest in property, "an instrument is not given effect as an assignment of an expectancy or future interest unless it clearly manifests the intention of the prospective heir to sell, assign or convey his expectancy or future interest." *Clark v. Gauntt*, 161 S.W.2d 270, 273 (Tex. 1942); *see also McConnell v. Corgey*, 262 S.W.2d 944, 947 (Tex. 1953) (same). The Property Code has codified this principle. Tex. Prop. Code Ann. § 5.041 ("A person may make an inter vivos conveyance of an estate of freehold or inheritance that commences in the future, in the same manner as by a will.").[8]

In 1932, W.H. and Annie transferred a future interest to Henry that did not vest until after both of their deaths.[9] Therefore, Henry received a vested future

---

[8] The statute in effect at the time of the conveyance similarly allowed a conveyance of an estate in land to commence in the future. *See* Revised Statutes, 39th Leg., R.S., § 1, art. 1296, 1925 Tex. Rev. Civ. Stat. 2, 390 ("Estates in futuro.—An estate or freehold or inheritance may be made to commence in futuro, by deed or conveyance, in like manner as by will."), *repealed by* Act of May 26, 1983, 68th Leg., R.S., ch. 576, § 6, 1983 Tex. Gen. Laws 3475, 3729.

[9] "A present interest is an ownership interest in property that entitles the owner to possession or enjoyment of the property." *Restatement (Third) Of Property (Wills & Don. Trans.)* § 24.1 (Am. L. Inst. 2011). A future interest in property, on the other hand, "is an ownership interest . . . that does not currently entitle the owner to possession or enjoyment of the property." *Id.* at § 25.1. A present interest in property means an owner can currently exercise his ownership rights to possess and enjoy the property, while a future interest recognizes that "[t]he owner's right to possession or enjoyment is postponed until some time in the future[.]" *Id.* Future interests are either "contingent" or "vested." *Id.* at § 25.3. A "vested" interest is a future interest where the future event is certain to occur, such as the death of a testator. *See Bufford v. Holliman*, 10 Tex. 560, 572 (1853) ("the remaindermen took a vested interest at the death of the testator.").

10

interest, a vested remainder,[10] because the death of his parents was a condition certain to occur:

| Lot 43 royalty interest | after 1932 deed |
|---|---|
| W.H. and Annie | 1/2 <br> 1/2 (life estate with Henry as vested remainderman) |

### b.  The sale of the royalty interests to third parties

In 1934, W.H. and Henry (along with their wives) sold half of the total royalty interest on the property, which reduced their individual royalty interest in lot 43 as follows:

| Lot 43 royalty interest | after 1934 sale of royalty interests |
|---|---|
| W.H. and Annie | 1/2 (life estate with Henry as vested remainderman) |
| Standard Oil | 1/4 |
| Gillett Hill | 1/4 |

### c.  Henry received an additional 1/4 interest

Then, in 1936, W.H. and Annie conveyed to Henry another 1/4 royalty interest as his separate property:

---

[10] A vested remainder is "a present right of future enjoyment, a fixed interest, with only the right of possession postponed until the ending of a particular estate." *Caples v. Ward*, 179 S.W. 856, 858 (Tex. 1915); *see also Moody v. Pitt*s, 708 S.W.2d 930, 934 (Tex. App.—Corpus Christi 1986, no writ) (when life estate terminates upon death with remaining corpus to be distributed to the remaindermen (the four children), "the children's future interests . . . are vested remainders.").

| Lot 43 royalty interest | after 1936 conveyance |
|---|---|
| W.H. and Annie | 1/4 (life estate with Henry as vested remainderman) |
| Henry | 1/4 separate property |
| Standard Oil | 1/4 |
| Gillett Hill | 1/4 |

### d. Annie's gift deed

In 1944, Annie conveyed to each of her children 1/28 of the 1/8 royalty interest in lots 43 and 36 (1/7 of 1/4).

Because W.H. and Annie had already divested themselves of all but a life estate in 1/4 of the 1/8 royalty, the Smiths argue that Annie's gift deed to her children only conveyed a life estate to her children of 1/7 of 1/4 of 1/8 royalty. Because her gift deed could not convey more than she owned, upon her death in 1964, they assert the entire 1/4 of 1/8 royalty interest which Annie purported to transfer to her children automatically vested in Henry:

| Lot 43 royalty interest | after Annie's death |
|---|---|
| Henry | 1/4 community property |
| Henry | 1/4 separate property |
| Standard Oil | 1/4 |
| Gillett Hill | 1/4 |

However, Annie's gift deed states that she conveyed a "perpetual" 1/28 interest to each of her children, which is not consistent with prior conveyances reflecting that Annie only possessed a life estate. Based on the real property

12

records, Henry could have challenged his mother's gift and the ultimate probate disposition of his parents' estate in which all the royalty interests owned by W.H. and Annie were divided equally amongst their children. Instead, he accepted the gift deed. *See Texas Land & Mortgage Co. v. Cohen*, 159 S.W.2d 859, 863 (Tex. 1942) (recording of deed creates presumption deed was delivered and grantee accepted deed); *Taylor v. Sanford*, 193 S.W. 661, 662 (Tex. 1917) (acceptance of gift deed is presumed unless such presumption is rebutted).

The trust agreement further confirms Henry's acceptance of the gift deed in lieu of asserting a greater royalty interest in lot 43. The trust agreement describes Henry's separate property as consisting of 1/6 of 1/4 of the 1/8 royalty interest. If, as the Smiths argue, Henry had only accepted Annie's gift deed to convey a life estate in this royalty interest, then Henry would own the entire 1/4 of 1/8 royalty interest that Annie attempted to distribute. Henry's description of his separate property as containing the 1/6 interest from Annie's gift deed and the subsequent disposition of his parents' estate was fundamentally incompatible with a claim on his part to the entire 1/4 of 1/8 royalty.

As a grantee to the 1932 deed, the 1936 deed, and Annie's gift deed, Henry is charged with knowledge of all those conveyances as well as acceptance of all three conveyances. *See Texas Land & Mortgage Co.*, 159 S.W.2d at 863. However, Henry's purported ownership of 1/6 of 1/4 of the 1/8 royalty reflects his acceptance of Annie's gift deed as a perpetual 1/6 of 1/4 of the 1/8 royalty interest, as the deed purports, and a rejection of his claim to the vested future interest his parents conveyed to him. We conclude that any claim Henry may have had to a greater share of the royalty interest was waived or abandoned by his acceptance of Annie's gift deed and the subsequent probate distribution of his parents' estate.[11] *See*

_____

[11] "[A]demption describes the extinction of a specific bequest or devise because of the

*Trevino v. Turcotte*, 564 S.W.2d 682, 685–86 (Tex. 1978) ("It is a fundamental rule of law that a person cannot take any beneficial interest under a will and at the same time retain or claim any interest, even if well founded, which would defeat or in any way prevent the full effect and operation of every part of the will."); *see also Estate of Johnson*, 631 S.W.3d 56, 61 (Tex. 2021) (acceptance-of-benefits doctrine arises out of equity's "aversion to a claimant who seeks to exploit irreconcilable positions"); *Stanolind Oil & Gas Co. v. State*, 133 S.W.2d 767, 776–77 (Tex. 1939) (landowner who accepted patent and those claiming under him are estopped from claiming land outside patent); *McAnally v. Texas Co*., 32 S.W.2d 947, 951 (Tex. Civ. App.—Eastland 1930), *aff'd*, 76 S.W.2d 997 (Tex. 1934) ("His acceptance of the second deed constitutes an election to take the land conveyed by the corrected deed, and operates as a relinquishment of title to the land conveyed by the first deed, as one who accepts the benefits of a conveyance must adopt the whole of it.").

Therefore, at the time Henry and Ophelia created the trust for their daughters, Henry owned 1/4 of the 1/8 royalty interest in lots 36 and 43, as well as 1/6 of 1/4 of the 1/8 royalty interest in lots 36 and 43 he inherited from his mother, all owned as his separate property.

### 2. What did Henry convey into the trust?

The trust agreement contains the following description of property to be

disappearance of or disposition of the subject matter given from the estate of the testator in his lifetime." *Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 148 (Tex. 1980). Henry could have challenged the distribution of his mother's estate on the basis that the royalty interest was adeemed because it was already conveyed. The time for objection passed decades before the Smiths filed their challenge to the royalty distributions. *See generally* Texas Probate Code, 54th Leg., R.S., ch 55, § 1, secs. 93 (period for contest validity of will is two years), 147 (enforcement of claim against estate by suit on independent executor), § 298 (claims against decedent's estate to be presented within one year of grant of letters testamentary or of administration), 1955 Tex. Gen Laws 88, 118, 136, 171 (since amended and repealed).

conveyed:

> Description of the property which is being conveyed in trust by Henry Avitts and wife, Ophelia Avitts, as Trustors, to S. P. O'Farrell as Trustee.

> All of the community property Interest which is owned by Henry Avitts and wife, Ophelia Avitts, in that one certain oil and gas lease in which Amoco Production Company is the Lessee, all of the community property Interest of Henry Avitts and wife, Ophelia Avitts, being a 0.03125 royalty interest lease being known as the W. H. Avitts "B" lease on real property described as Lots 36 and 43, Section 29, HT&8 RR Co. Survey, Abstract 292, Brazoria County, Texas. This royalty Interest is referred to by Amoco Production Company as Lease No. 460129 and is further referred to by Amoco Production Company as Owner No. 401994, and as Business Associate No. 622488-00-5.

> The community property interest which is conveyed does not include the separate property interest owned solely by Henry Avitts in the W. H. Avitts "A" and "B" leases, being a 0.0104166 royalty interest 1n the "A" lease and a 0.0052083 royalty interest in the "B" lease; These royalty interests are referred to by Amoco Production Company as Business Associate No. 690042-00-7.

> The property described in this trust is the royalty interest in said lease above only, and shall not be considered as a complete conveyance of all mineral interests which are owned by the Trustors on the above described real property.

The Smiths argue that the language of the trust supports a construction that Henry intended to convey his community property only, and that the trial court should have ignored the "non-restrictive dependent clause[]" because it gives "additional description or information that is incidental to the central meaning of the sentence and could be taken out of the sentence without changing its meaning." We disagree.

Our analysis here is guided by *U.S. Shale Energy II, LLC v. Laborde Properties, L.P.*, the case on which the Smiths principally rely. 551 S.W.3d 148

15

(Tex. 2018). In *U.S. Shale Energy II*, the supreme court interpreted a deed to determine whether it conveyed a "fixed (set at a specific percentage of production) or floating (dependent on the royalty amount in the applicable oil and gas lease)" royalty interest. *Id*. at 150. In determining the royalty interest was floating, the court discussed the principles of interpretation to be applied:

> As is often the case, the parties here agree the deed in question is unambiguous but diverge on its proper interpretation. *See, e.g.*, *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991); *Garrett v. Dils Co*., 157 Tex. 92, 299 S.W.2d 904, 907 (1957). "When construing an unambiguous deed, our primary duty is to ascertain the intent of the parties from all of the language within the four corners of the [instrument]." *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017). "We examine the entire [instrument] and seek to harmonize and give effect to all provisions so that none will be meaningless." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010); *Luckel*, 819 S.W.2d at 462 (noting that, in construing a deed, we attempt to harmonize provisions that "appear contradictory or inconsistent" so as "to give effect to all of its provisions"). Recently, in *Hysaw v. Dawkins*, we reaffirmed "our commitment to a holistic approach aimed at ascertaining intent from all words and all parts" of the deed. 483 S.W.3d 1, 13 (Tex. 2016). Further, we consider the words used in light of "the facts and circumstances surrounding the [instrument's] execution." *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981). We may consider such circumstances to the extent they "inform, rather than vary from or contradict, the [instrument's] text." *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 767 (Tex. 2018).

*Id*. at 151. The deed at issue in *U.S. Shale Energy II* reserved "an undivided one-half (1/2) interest in and to the Oil Royalty, Gas Royalty and Royalty in other Minerals in and under or that may be produced or mined from the above described premises, the same being equal to one-sixteenth (1/16) of the production." *Id*. at 153. Construing the document to give effect to both of the clauses at issue, the court concluded that "the second clause, 'the same being equal to one-sixteenth

16

(1/16) of the production,'" was intended to clarify, as an incidental factual matter, what a 1/2 interest in the royalty amounted to when the deed was executed. *Id*. at 153–54. After reaching this conclusion, the majority in *U.S. Shale Energy II* bolsters their interpretation by addressing the grammatical structure of the sentence. *Id*. at 154. As here, the language at issue in *U.S. Shale Energy II* contained a nonrestrictive dependent clause set off by a comma. *Id*.

Because our primary duty is to ascertain the intent of the parties from the four corners of the agreement, we begin with the parties' intent. *Id*. at 151. Though Henry and Ophelia describe the interests they intended to convey as community property, they did not simply convey all their community property interest into the trust. Henry and Ophelia specifically described the interests being conveyed into the trust as 1/4 of the 1/8 royalty interest in lots 36 and 43. The Smiths would have us ignore this clause entirely. In *U.S. Shale Energy II*, the nonrestrictive dependent clause found to be an incidental factual matter described the effect of a 1/2 interest in the royalty at the time the deed was executed. *Id*. at 153–54. However, the Smiths' proposed interpretation of the trust agreement would render the dependent clause void as it would not even describe an incidental factual matter.

Given our conclusion that all of Henry's royalty interest in lots 36 and 43 was held as separate property, the interpretation of the trust agreement proposed by the Smiths would render the entire trust agreement a nullity. If Henry intended only to convey his community property into the trust and he possessed no community property royalty interest in lots 36 and 43, then the trust agreement conveyed nothing. This would lead to an absurd result, which we avoid in construing an instrument's language. *Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011).

Our interpretation of the trust agreement reflects an intent by Henry and

Ophelia to transfer 1/4 of the 1/8 royalty into the trust, regardless of the characterization of the assets as separate or community property.[12] The labeling of the assets as community or separate property here was an incidental factual matter that was intended to describe the assets made the subject of the trust, not govern their disposition. The language in the trust agreement that specifically describes Henry's separate property as consisting of 1/6 of 1/4 of the 1/8 royalty also supports this interpretation. Henry specifically provided that his separate property interest of 1/6 of 1/4 of the 1/8 royalty would not be part of the trust. If there were additional separate property interests that he did not want transferred into the trust, Henry could have so specified. In summation, the language of the trust agreement suggests that Henry viewed his 1/4 of the 1/8 royalty in lots 36 and 43 as community and that he indisputably intended to transfer that royalty interest in trust to his daughters.

The termination of trust, also filed in the real property records, is consistent with this interpretation.[13] Although the Smiths claim the record does not reveal

---

[12] Texas law allows spouses to convert separate property to community property, but such an agreement must be in writing, signed by the spouses, identify the property being converted and specify that the property is being converted to the spouses' community property. Tex. Fam. Code Ann. §§ 4.202, .203(a); Tex. Const. art. XVI, § 15 ("spouses may agree in writing that all or part of the separate property owned by either or both of them shall be the spouses' community property"). There is no document in the record that purports to convert Henry's separate property to his community property; however, our interpretation of the trust agreement reflects Henry's intent to convey his separate property into the trust.

[13] The termination of trust provides in relevant part:

Henry Avitts and wife, Ophelia Avitts, as Trustors, Vernon Smith, as Successor Trustee, and Mrs. Modeen O'Farrell, Mrs. Henrietta Smith, Mrs. Anita Collins, Mrs. Sheryl Shehane and Mrs. Kathy Jackson, as Beneficiaries, which trust consists of the following described royalty interests situated in Brazoria County, Texas, to-wit:

1/4 of 1/8 (.0312500) RI, Lots 36 and 43, Section 29, NT&B Railway Company Survey; Abstract 292, Brazoria County, Texas.

The parties elect to terminate this trust for the reason that it has become

what assets were conveyed into the trust, the termination of trust specifically states the trust contained 1/4 of the 1/8 royalty interest in both lots 36 and 43. Henry signed the termination of trust reflecting his agreement and intent that, regardless of its characterization as separate property, he intended to convey 1/4 of the 1/8 royalty into the trust for his daughters. The termination of trust further reflects his intent and agreement to distribute that 1/4 of the 1/8 royalty interest in both lots to his five daughters in 1988.

Concluding the trial court did not err in finding that Henry conveyed his separate property into the trust and therefore barring the Smiths' claim to the disputed royalty interest, we overrule issue 3.

## E. Trial court did not err in rendering a take-nothing judgment

Having concluded that Henry accepted 1/6 of 1/4 of the 1/8 royalty interest from his parents' estate instead of asserting a claim to a larger royalty and then conveyed his separate property interest of 1/4 of the 1/8 royalty interest in lots 36 and 43 to his daughters in trust, we hold the trial court's judgment was supported by legally- and factually-sufficient evidence. Therefore, the trial court did not err in rendering judgment that the Smiths take nothing by their claims. Because the Smiths did not succeed in establishing their superior title, we need not address the affirmative defenses raised by appellees. *See* Tex. R. App. P. 47.1; *see also Northshore Bank v. Commercial Credit Corp.*, 668 S.W.2d 787, 789 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (in interpleader action, "each claimant has the burden of proving its own claim and its relative priority as to all other

economically infeasible to administer the trust because of its size.

. . . .

Trustors and Trustee do hereby agree to terminate the trust for the benefit of the beneficiaries and do hereby pay over and assign to each of such beneficiaries the property held in trust for her benefit to be hers absolutely and free from any claim.

claimants").

We overrule issues 4, 5 and 6.[14]

### III. CONCLUSION

We affirm the judgment of the trial court as challenged on appeal.


/s/    Charles A. Spain
          Justice

Panel consists of Justices Wise, Spain, and Hassan.

---

[14] In issue 4, the Smiths argue the trial court erred in rendering judgment that the Smiths take nothing by their claims and in making findings of fact that the Smiths' claims were barred by the affirmative defenses of res judicata, release, compulsory counterclaim, estoppel by deed, ratification, statute of limitation, quasi-estoppel, and waiver. In issue 5, the Smiths argue the trial court erred in its findings of fact and conclusions of law related to the respective royalty interests owned by the Smiths and the appellees, as there was no evidence to support such findings and conclusions, or in the alternative, there was insufficient evidence to support such findings and conclusions. In issue 6, the Smiths argue the trial court erred in making its conclusions of law related to the take-nothing judgment as to the Smiths, as there was no evidence to support such conclusions of law or in the alternative, there was insufficient evidence to support the conclusions of law.